WOODMANSE & HEWITT MANUF'G CO. v. WILLIAMS et al.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1895.)

No. 267.

1. EQUITY JURISDICTION IN PATENT CASES.
   The ground upon which a court of equity takes cognizance of an infringement suit is the relief through an injunction. There is nothing peculiar to infringement suits for damages and profits whereby equity jurisdiction may be maintained, and it must appear that the remedy at law is inadequate.

2. SAME—LACHES OF PATENT OWNER—EFFECT OF ASSIGNMENT.
   The negligence or acquiescence of the former owners of a patent in an alleged infringement has, in equity, the same effect upon an assignee's rights as his own neglect or acquiescence.

3. SAME.
   Fourteen years' delay by a patent owner and his predecessors in interest, in making any attempt to assert their rights against an alleged infringing company, openly engaged in making and selling a rival and competitive machine, and without even serving notice of infringement, *held* such laches as to require dismissal of the bill.

4. SAME.
   Laches is a defense which may be made by demurrer, or by plea, or by answer, or presented on argument either upon preliminary or final hearing. It need not be formally set up in answer.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This was a bill by the Woodmanse & Hewitt Manufacturing Company against Bradley S. Williams, Malcolm B. Williams, Homer Manvel, and the Williams Manufacturing Company for alleged infringement of certain patents for improvements in windmills. The circuit court dismissed the bill on the ground of laches, and complainant appeals.

L. L. Coburn, for appellant.

Bondeman & Adams (Dallas Bondeman, of counsel), for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, District Judge.

LURTON, Circuit Judge. This is a bill in equity. It was filed August 1, 1890. Complainant is by assignment the owner of two patents for certain improvements in windmills, which it alleges have been, and are being continuously, infringed by the defendants. The prayer of the bill is for an injunction, and for an accounting as to damages and profits. No preliminary injunction was asked or allowed, and upon final hearing the bill was dismissed upon grounds stated in an opinion by District Judges Sage and Severens.[1] The original bill was filed alone against the individual defendants Bradley S. Williams, Malcolm B. Williams, and Homer Manvel, who were charged as being engaged in manufacturing and selling windmills infringing the complainant's two patents, under the firm name and style of B. S. Williams & Co. The evidence taken developed the fact that about two years before the suit was begun the firm of B. S. Williams & Co. had ceased to do business as a firm, and had organized a corporation known as the Williams Manufacturing Company, to which the entire plant and business of the firm had been conveyed, and in which the individual members of the firm were interested as shareholders and managers. Upon this appearing, the court required complainant to amend its bill by making the corporation a defendant, which was done May 10, 1892. Its answer embodied substantially the defenses theretofore set up in the answer of the individual defendants. Among the defenses set up in their answer were, noninfringement, want of patentable novelty, anticipation by many other patents specifically set out, prior use by the defendants and their predecessors in business, denial that either complainant or its assignors had given defendants or their predecessors in business any notice that they were infringing. They further specifically aver that both of the patents claimed by complainant were anticipated by the Bignell patent No. 180,189, dated July 25, 1876, and that defendants were owners of an interest under that patent, or of the invention therein secured to Bignell and others, and that they had, as assignees of an interest therein, made and sold windmills under the Bignell patent in good faith. The answers also denied that Anderson, the patentee under one of complainant's patents, was the original inventor of the improvement claimed in the patent issued to him.

In the view we have taken of the evidence, it is only necessary for us to determine whether the laches of the complainant and its assignors has been such as will prevent a court of equity from entertaining this bill. One of the patents owned by complainant is for an improvement in windmills, issued December 19, 1876, on an application filed August 14, 1876, and was issued to L. D. Anderson,

---

[1] Not reported.

assignor to Harrison Woodmanse, being patent No. 185,423.    What the patentee claimed is thus described:

"What I claim as new, and desire to secure by letters-patent, is as follows: In a windmill, the shoe or brake, d, in combination with the vane, B, and shaft, A, of the windmill, substantially as and for the purposes specified."

The other patent involved is patent No. 220,514, dated October 14, 1879, and was issued to Harrison Woodmanse, assignor of the Anderson patent, and Samuel Lebkicker, for an improvement in windmills by providing a lever in connection with a brake wheel so arranged as to be operated by a projection upon the inner end of the vane, for the purpose of rendering the brake more effective. Complainant's suit must turn upon the alleged infringement of the claims of the Anderson patent.   The claim of the Woodmanse & Lebkicker patent involved is the first, which reads as follows:

"The brake shoe, b; the lever, c, in combination with the wheel, a, and vane, e, substantially as and for the purposes specified."

This slightly different arrangement of the leverage, in the application of the brake to the shaft, from that claimed in the Anderson patent, is not satisfactorily shown to have been infringed by the brake used by defendants.

In 1873, Bradley S. Williams, W. H. Pendleton, Kirk A. Smith, and C. M. Hobbs, under the style of Pendleton, Williams & Co., began the business of making and selling windmills at Kalamazoo, Mich.    That business has been steadily pursued, and the Williams Manufacturing Company are but the successors of the original firm of Pendleton, Williams & Co.    Hobbs and Smith, of the original firm, sold out in 1879.    The defendant Homer Manvel bought in in 1874, and the other individual defendants bought an interest in 1880.    From 1880 the firm was composed of B. S. Williams, Homer Manvel, and M. B. Williams, and did business as B. S. Williams & Co. until 1889, when the present corporation was organized, the same persons being stockholders and officers.    The evidence clearly establishes that, as early as 1874 or 1875, the defendants, or their predecessors in business, began making a brake, and applying it to their windmills, which is substantially the same brake which the present corporation is making, and this brake, with occasional slight improvements, has been continuously made and used on the windmills sold by defendants, or those to whom it has succeeded, for a period of about 15 years before this suit was brought.    Now, if it be conceded that the patents owned by complainant were not anticipated by either the Bignell patent or any of the others claimed as anticipations, a point by no means clear, and that the brake made and sold with the defendants' mills does infringe both or either of the complainant's patents, we then have a case where suit has been delayed against an infringer openly and publicly engaged in selling a rival and competitive mill to that made and sold by complainant and its assignors for a period of 14 years after issuance of the Anderson patent, and of about 11 years after the Woodmanse and Lebkicker improvement.    No excuse for this long delay is shown.    Mr. Woodmanse, who is the manager of

the complainant corporation, was the assignor of the Anderson patent, and a joint patentee under the improved brake covered by the letters patent granted in 1879. Since 1876 Woodmanse has been engaged in the same line of business, and has been interested in the successive firms and corporations controlling both the Anderson and Woodmanse patents. The complainant does not pretend that it or its predecessors were ignorant of the alleged infringement. No such excuse is offered. Indeed it is not within the range of probability that two rival concerns engaged in selling competitive windmills in the same section of the Union could have been ignorant of the fact that the mills of each contained substantially the same brake mechanism. Neither does it appear that the complainant was involved in other litigation with other infringers, which might to some extent explain its conduct in standing by and acquiescing in the alleged infringement for a period of 14 years. Indeed no excuse whatever is made for its long neglect to assert its right. In the meantime the defendants and their predecessors in the business, under claim of right, have been suffered to go on and build up their business and push their mills into common use, without any notice whatever from complainant or its assigns of a claim that they were infringing. It is no answer to say that the complainant corporation was only organized a few years before suit was brought. Its predecessors in the ownership of the patent were also its predecessors in the business it is now carrying on in the making and selling of windmills embodying the brake covered by its patents. The complainant took these patents by assignment from assignors who had for years been guilty of negligence in the assertion of their alleged monopoly. The acquiescence of the former owners of the patent has in equity the same effect upon complainant's rights as its own subsequent neglect. Rob. Pat. § 1194; Spring v. Sewing Mach. Co., 4 Ban. & A. 427, Fed. Cas. No. 13,258. In McClurg v. Kingsland, 1 How. 205, the plaintiff was the assignee of Harley, the patentee. Harley's invention had been made while in the employment of the defendant, and under such circumstances as to raise the presumption of a license to his employers to continue the use of his discovery in its business. The court held that the plaintiff, as assignee of Harley, stood in his place as to right and responsibility, "and took the assignment of the patent subject to the legal consequences of his previous acts, and, connecting these with the absence of an assertion of a right adverse to the defendants' use till this suit was brought, protected the defendants from liability for any damages therefor."

The ground upon which a court of equity will take cognizance of a suit for an infringement of a patent is the relief through an injunction. There is nothing so peculiar to a suit for damages and profits for infringement of a patent as will, independently of some recognized ground of equitable jurisdiction, justify a court of chancery in assuming jurisdiction. It must appear that the legal remedy at law is inadequate, and if the case is one in which equitable relief by injunction is inappropriate, as where the patent has expired, or where the circumstances are such as to justify a court

in refusing equitable relief, the suit will not be entertained for the mere purpose of an account of past damages and profits. Root v. Railway Co., 105 U. S. 189; McLaughlin v. Railway Co., 21 Fed. 574; Clark v. Wooster, 119 U. S. 325, 7 Sup. Ct. 217.

Aside from the fact that no preliminary injunction was applied for or allowed, and that when the final hearing was had plaintiff Anderson's patent had expired, we think that the conduct of complainant, and those to whose rights it has succeeded, has been such as to require a court of equity to refuse it any relief whatever. Reasonable diligence as well as good faith are necessary to call into operation the powers of a court of equity. Maxwell v. Kennedy, 8 How. 222. One who invokes the protection of equity must be "prompt, eager, and ready" in the enforcement of his rights. Equity will not encourage a suitor who has long slept over his rights. It was well observed by Judge Coxe, in Kittle v. Hall, 29 Fed. 511, that "time passes, memory fails, witnesses die, proof is lost, and the rights of individuals and of the public intervene. Long acquiescence and laches can only be excused by proof showing excusable ignorance, or positive inability to proceed on the part of the complainant, or that he is the victim of fraud or concealment on the part of others." He adds "that the court will not entertain a case when it appears that the complainant, or those to whose rights he has succeeded, have acquiesced for a long term of years in the infringement of the exclusive right conferred by the patent, or have delayed, without legal excuse, the prosecution of those who have openly violated it." These general principles find ample support in many cases, only a few of which need be cited: Piatt v. Vattier, 9 Pet. 416; Maxwell v. Kennedy, 8 How. 221, 222; Leggett v. Oil Co., 149 U. S. 288-294, 13 Sup. Ct. 902; McLaughlin v. Railway Co., 21 Fed. 574; Speidell v. Henrici, 15 Fed. 753; The Walter M. Fleming, 9 Fed. 474; Lewis v. Chapman, 3 Beav. 133. That this doctrine of courts of equity requiring reasonable diligence as a condition precedent to the exercise of its discretionary powers is applicable in patent cases is manifest from a consideration of the nature of the relief sought against an infringer. Equity will not entertain a suit merely involving an ascertainment of damages and profits. This question was elaborately considered and expressly decided in Root v. Railway Co., heretofore cited. Equitable jurisdiction in patent cases is therefore subject to the general principles of equity jurisprudence, and the power to grant injunctions in such cases, according to the provisions of section 4921, Rev. St., must be "according to the course and principles of courts of equity, to prevent the violations of any rights secured by a patent, upon such terms as the court may deem reasonable." That inexcusable laches of the complainant is a sound reason for noninterference on the part of a court of equity was expressly decided in McLaughlin v. Railway Co., heretofore cited; the opinion being by Circuit Judge Brewer, now Justice Brewer. In that case a delay of 13 years was held ground for dismissing the bill upon a demurrer. In Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, the supreme court held that a delay of 12 years was a bar to any relief in equity against an in-

fringer, Justice Shiras, who delivered the opinion of the court, saying:

"Courts of equity, it has often been said, will not assist one who has slept on his rights, and shows no excuse for his laches in asserting them."

In the very late case of Keyes v. Mining Co., 15 Sup. Ct. 772, the doctrine of McLaughlin v. Railway Co., and Lane & Bodley Co. v. Locke, was followed, and a complainant who had delayed for nearly 17 years was repelled from court as guilty of inexcusable laches. Neither is it important that the defense of laches was not formally set up in the answer. Laches is a defense which may be made by demurrer, or by plea, or by answer, or presented by argument, either upon a preliminary or final hearing. Maxwell v. Kennedy, 8 How. 222; Walk. Pat. § 597; Curt. Pat. § 440; McLaughlin v. Railway Co., 21 Fed. 574.

The decree of the circuit court dismissing complainant's suit will be affirmed.