RICHARDSON v. D. M. OSBORNE & CO. et al.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 55.

1. PATENTS—INFRINGEMENT SUIT—LACHES.

A patent owner who, for about 14 years, witnesses the extensive and increasing manufacture and sale of an alleged infringing machine, without taking any steps to enforce his rights, is guilty of laches precluding him from maintaining an infringement suit.

2. SAME—HARVESTERS.

The right of the owner of the Fowler patent; No. 181,664, for an improvement in machines for bundling grain, to sue for infringement, *held* to have been lost by laches.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This was a suit in equity by James G. Richardson against D. M. Osborne & Co. and others for alleged infringement of a patent for an improvement in machines for bundling grain. In the circuit court the bill was dismissed because of complainant's laches (82 Fed. 95), and the complainant has appealed.

Horatio C. King and George A. Clement, for appellant.
James J. Storrow and Frederick P. Fish, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Letters patent No. 181,664 were granted on August 29, 1876, to Thaddeus Fowler, as inventor, and to James G. Richardson and his two brothers, Wilbur J. Richardson and Isaac S. Richardson, as assignees of one-half of the patent, for an improvement in machines for bundling grain. A bill in equity, verified on June 8, 1893, which was based upon the alleged infringement of this patent, was brought in the Northern district of New York by James G. Richardson, who became the owner of the entire patent on October 7, 1890, against D. M. Osborne & Co., a corporation, and its officers. The defenses which were relied upon were the unexplained laches of the owners of the patent in attempting to enforce their alleged rights, the prior invention of the patented structure by John F. Appleby, noninfringement, and nonpatentability. The circuit court dismissed the bill by reason of the laches of the owners of the patent. The invention is a part of a harvester, and was a device which will automatically discharge the bundle of grain when a certain predetermined quantity has been gathered, and consisted in a beater, which, having pressed the grain into the holder, was combined with a deliverer, which, when the beater had attained a predetermined pressure upon the bundles, was caused to remove the gathered bundle from the holder, either to the binding machine or to a binding ma-

chine combined with the device, or to the ground, to be otherwise bound.    Fowler assigned his interest in the patent to the Richardson brothers on November 21, 1876.    The only machine which was ever made under this patent was built by the inventor in Seymour, Conn., in the summer of 1876, and is said to have been "shipped West." Whither it went is not stated by adequate testimony, what became of it is unknown, no license was ever given to build or to use a machine, and the patent continued to be a mere paper patent.

The grain-binding harvester, patented to John F. Appleby on February 18, 1879, by letters patent No. 212,420, began to be introduced to the public in 1878, and speedily went into universal use in the grain-producing portions of the Western states, and is said to contain Fowler's bundling device.    The leading manufacturers of harvesting machines bought shop rights at prices which seem excessive, it supplanted all previous binders, is still being manufactured, and its widespread use and its commercial success were known by all dealers in machines of this class.    James G. Richardson lived in Lake City, Minn., from 1863 to 1887, was in partnership with one of his brothers in the sale of harvesters, reapers, and binders, and the firm acted as agents for the Johnson Reaper Company, J. Easter & Co., Gammon & Deering, and William Deering & Co., who were manufacturers of this class of machinery.    The particular business of the complainant was the introduction of farm machines into active work upon the farm, and he must have been perfectly familiar with the mechanism and the extent of the use of the Appleby binder.    He regarded the infringement as a palpable one, and, as the use was universal, he thought that practically all the binders and harvesters made in this country between 1879 and 1893 infringed the Fowler patent.    This suit was brought about 2½ months before the expiration of the patent, and after the extensive and expensive manufacture of Appleby machines had progressed at an increasingly active rate, within the complainant's knowledge and observation, for about 14 years.

The defendants say that the owners of the patent were practically silent, permitted this expenditure to go on without interference or any adequate assertion of their alleged rights, and that the suit was barred by their inexcusable laches.

The record shows that nothing was done in the way of litigation, or active attempts to push either the patent or their claims, until May, 1890.    No effort was made by either of the owners to make contracts or agreements with manufacturers to use the patent, and no effort was made by legal proceedings to suppress its infringement. The complainant's brothers would not enter into expenses for this purpose, would not consult with his attorneys, and opposed litigation. They were not poor and were not rich, but not only discouraged any litigation, but refused to participate in the expenses of an investigation as to the validity of the patent.    Meantime, no efficient or active representations were made to the harvester companies of their infringement.    The complainant says that he sent notices to the manufacturers, and, among others, to the defendant corporation, in the latter part of 1883, and met the president in Lake City by appointment in January, 1884.    He says:    "We had some conversation.    He

asked what our claim was. He was told that it was on the com-bination. We talked together perhaps fifteen minutes, pleasantly." This was the extent of the manifestation to the defendant of the complainant's claim of right to a part of the Appleby machine, which was being made by the thousands. In May, 1890, an action at law was brought against the Minneapolis Harvester Works, which was compromised before trial, in September, 1891, by the payment of money and a release by the complainant. He did not tell how much money was paid, or whether it was in recognition of the validity of the patent. For aught that appears, all that the defendant did was to pay a trifling sum to be freed from a lawsuit. No other proceeding was instituted until the present suit. The only thing which can be, during the entire history of the invention, characterized as an active exercise of ownership, was the Minneapolis suit, and its outcome is so vague and shadowy that it cannot be told whether it was a successful or an abandoned attempt to sustain the patent. The continued refusal or neglect of the joint owners to impart life to it was so manifest that a court cannot look with favor upon the present attempt to gain money from manufacturers who invested in the effort to supply the demand for Appleby machines, under the belief that it infringed no patent,—a belief which the conduct of the owners of the Fowler patent encouraged. All the adjudged cases in regard to laches proceed upon the inequitable conduct of the complainant, and the inequity which would result if the stale claim was permitted to be enforced, and the judgments adverse to the claimant are founded upon the fact that the party to whom laches is imputed has all the time "knowledge of his rights, and an ample opportunity to establish them in the proper forum; that, by reason of his delay, the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them." A further reference to decided cases is unnecessary, as Judge Coxe has cited many of them in his opinion (82 Fed. 95).

Much testimony was also introduced by each party as to the second defense, which was Appleby's priority of invention. The date of the Fowler invention was placed by the complainant and his witnesses in the prima facie case in the summer of 1876, which was its actual date, although an attempt was subsequently made to place it in the summer of 1875. Appleby's first machine was made at the factory of the Parker Steam Reaper Works in Beloit in the winter of 1874–75, was tried in the summer of 1875, and was destroyed by order of one of the owners of the factory. A second crude machine was made, which was finished before January 1, 1876, did no work in the field, and was accidentally burned after the commencement of this suit. Four machines were then built for the same owner, the first one of which was finished in April, 1876, and was tried upon green rye in June, 1876. The written specification of the patent was executed on October 19, 1876. It is probable that the machine was the one described in the Appleby patent. As an entirety, it was not a perfect machine; for the knotting mechanism and the manner of attachment

to the harvester were subsequently improved. We think that Fowler's invention was probably in the Appleby machine as and when it was tried in June, 1876; but it is unnecessary to analyze the testimony with the closest care, and to decide the question of the priority of two inventions, the patents upon which have now expired, for the case of the complainant is so defective by reason of the laches of himself and his co-owners that the decree of the circuit court must be affirmed, with costs.