STARRETT v. J. STEVENS ARMS & TOOL CO.

SAME v. ATHOL MACH. CO.

(Circuit Court, D. Massachusetts. July 29, 1899.)

Nos. 1,027 and 1,028.

1. PATENTS—INFRINGEMENT SUITS—LACHES.
    A delay of 10 years by a patent owner after knowledge of an alleged infringement, and correspondence with defendant, who in good faith contended for a construction of the patent avoiding infringement, *held* to be such laches as would bar all relief in equity.[1]

2. SAME—INFRINGEMENT—SPRING CALIPERS AND DIVIDERS.
    The Fay patent, No. 319,215, for spring calipers and dividers, construed as including, as one element of the combination, the fulcrum and socket joint shown in the drawings and described in the specifications, and *held* not infringed.

[1] As to laches as a defense in suits for infringement, see note to Taylor v. Spindle Co., 22 C. C. A. 211.

These were two suits in equity, brought by Laroy S. Starrett against the J. Stevens Arms & Tool Company and the Athol Machine Company for alleged infringement of a patent for spring calipers and dividers.

Edward S. Beach, for complainant.

George L. & Reuben L. Roberts, for defendants.

BROWN, District Judge.   These suits are for infringement of letters patent No. 319,215, granted June 2, 1885, to Charles P. Fay, for spring calipers and dividers.   Both claims are in controversy. They are as follows:

"(1) In a caliper or similar implement, the combination of two legs having, respectively, a fulcrum and socket, as at 3, a curved spring embracing said legs, and an adjusting device for the legs, substantially as described.   (2) In a caliper or similar implement, the combination, with the notched legs having fulcrum and socket bearing, of the curved spring having notched ends resting in the notches in the legs, and with an adjusting-screw, substantially as described."

The original claims of the patentee were rejected by the patent office on the ground that they were anticipated by the patent to Hopkins, No. 110,657, dated January 3, 1871.   After the rejection of the original claims, the patentee substituted the present claims, using the following language in his communication of the claims to the commissioner of patents:

"The device is quite different from the reference.   The legs are not pivoted together, but have a fulcrum bearing on each other, and are held together by the spring.   It is believed the present claims point out the differences."

The drawings of the patent in suit clearly show a special form of fulcrum bearing, described in the specification as "consisting of a curved laterally-projecting short arm, 3, on one leg, and a socket or recess in the other leg opposite said arm, adapted to receive the end of the latter."   Upon removal of the spring that embraces the legs, the legs have no fast connection.   The specification further says:

"The slotted form of the spring at its ends, whereby the ends of the legs are engaged therewith, as above set forth, together with the screw-rod, c, conduces to hold the legs of the caliper in such a manner that they remain in the same plane as they would were they provided with the usual pivoted-joint connection."

Upon such statements of the patentee, each claim of the patent in suit must be construed to include as an element of the combination claimed a fulcrum and socket joint such as is shown in the drawings and described in the specification.   The prior patents to Hopkins, No. 110,657, January 3, 1871, and to Wright, No. 69,292, September 24, 1867, also require us to regard this special form of joint as essential to the "knock-down" features referred to by the patentee.   The patent, thus construed, is not infringed by the defendants.   The calipers manufactured by the defendants do not exhibit this form of fulcrum bearing.   They are provided with riveted or closed joints, which securely hold the legs together without a spring, herein differing essentially from the calipers described in the patent, wherein the spring is necessary to hold the calipers together at the joint, and is

essential to the operation of the calipers. The defendants' calipers without a spring are capable of some degree of practical use.

I am further of the opinion that in the case against the Athol Machine Company the complainant has been guilty of such laches as to debar him from all relief. It appears that early in 1888, and 10 years before the filing of the bill, the complainant was aware of the manufacture by the Athol Machine Company of the calipers now complained of, and that a correspondence ensued, in which was discussed the question now raised in this court as to the proper construction of the patent, the complainant at that time claiming that any style of joint, whether put together with a rivet or otherwise, could not be used with a detachable spring without infringement, and the complainant alleging that there was no infringement, saying of its structure:

"It is not possessed of what is generally termed 'knock-down' features, but its legs are jointed in an old and well-known way, and are securely riveted together. It has no such joint as is described either in the patent to Charles P. Fay, No. 319,215, of June 2, 1885, or in the patent of James H. Bullard. No. 335,740, of February 9, 1886."

From that time until the filing of his bill, on May 25, 1898, nothing was done to pursue his claim against the Athol Machine Company, and no explanation or extenuation of this 10-years delay appears. There was manifest good faith in the claim of the defendant that it was not infringing the complainant's device, and it would operate as a great injustice at this late day to interfere with an established business conducted under an open claim of right for so many years. The laches in this case are such as to debar not merely the claim for profits, but any claim to the interposition of a court of equity. Manufacturing Co. v. Williams, 37 U, S. App. 109, 15 C. C. A. 520, and 68 Fed. 489.

The same defense is made by the J. Stevens Arms & Tool Company, but this defendant does not point out in its brief any parts of the record that sustain its defense of laches. Though I consider the validity of the patent in suit exceedingly doubtful, in view of the patents to Hopkins, No. 110,657, dated January 3, 1871; to Wright, No. 69,292, dated September 24, 1867; to Marshall, No. 175,478, dated March 28, 1876; and to Sanborn, No. 57,977, dated September 11, 1866,—I do not deem it necessary to decide this question, as in my opinion the defendant does not infringe the patent fairly construed. The bills will be dismissed.