## NATIONAL CASH REGISTER CO. v. UNION COMPUTING MACH. CO.

(Circuit Court, D. New Jersey. February 19, 1906.)

1. PATENTS—INFRINGEMENT—CASH INDICATOR AND RECORDER.
    The Koch patent, No. 398,625, for a cash indicator and recorder, claim 3, must be narrowly construed, and, as so construed, *held* not infringed.

2. EQUITY—DEFENSE OF LACHES—HOW RAISED.
    Laches is a defense which need not be pleaded, but may be raised upon the argument, or, when found to exist, the court itself may be passive and deny relief.
    [Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 395.]

3. PATENTS—SUIT FOR INFRINGEMENT—LACHES.
    Unexcused and unexplained delay in bringing suit for infringement of a patent for 11 or 12 years after notice of such infringement, and when in the meantime the business of the alleged infringer had been transferred to another, constitutes acquiescence in the infringement, if any, or culpable laches, and estops the complainant from relief in equity.
    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 468.
    Laches as a defense in suits for infringement of patents, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 21; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

In Equity. On final hearing.

Frank Parker Davis, Edward Rector, and J. B. Hayward, for complainant.

Rush Taggart and Alan D. Kenyon, for defendant.

CROSS, District Judge. The bill of complaint charges the defendant with infringement of letters patent No. 398,625, issued February 26, 1889, to William Koch, and duly assigned to the complainant, for a cash indicator and recorder, and asks for the usual relief in such cases. The answer denied the validity of the complainant's patent for want of invention, and also denies infringement. The only claim involved is No. 3 which is as follows:

"(3) The combination, in a cash-indicating machine, of two or more groups of keys, a series of two or more indicating wheels, each bearing numbers or characters, corresponding with the keys in one of said groups, and which are mounted to be read in their normal order from left to right at the front of the machine, and a second series of duplicate wheels mounted to be read in similar order from left to right at the rear of the machine, the corresponding wheels in the two series being geared to move in unison and to be actuated simultaneously by the movement of the one key appropriate thereto, substantially in the manner and for the purpose herein set forth."

The defendant claims that its machine does not infringe this claim, because it has no keys, and because, even if it has what may be called keys, it does not have two or more groups of keys as called for by claim 3 of the complainant's patent. It will be instructive at this point to examine the file wrapper of the patent in suit to learn the history of claim 3. As originally presented, it was known as claim 4, and was in the following form:

"(4) In a cash-indicating machine, duplicate indicating wheels, geared to move in unison and display simultaneously the same number or characters at the front and rear of the machine, substantially in the manner and for the purpose herein set forth."

The claim in this form was rejected by the patent examiner in a letter dated June 30, 1888, citing patents of McCulley and Taylor, numbered respectively, 200,076 and 380,831. Koch thereupon, on July 16, 1888, struck out claim 4, and substituted therefor a new claim, numbered 3, expressed as follows:

"(3) In a cash-indicating machine, a duplicate series severally embracing two or more indicating wheels all geared to move in unison, and display simultaneously both at the front and rear of the machine, a duplicate series of two or more numbers or characters to be read alike in the same order from left to right in both series, substantially in the manner and for the purpose herein set forth."

This claim was likewise rejected July 27, 1888, for lack of clearness in expression, and for the further reason, using the language of the examiner, that "the subject-matter of this claim, is, however, fully met in the Taylor patent of record." After this rejection, and on July 30, 1888, Koch canceled the amended claim, and substituted a new claim 3, which is the one involved in this suit, whereupon the patent was allowed. He furthermore, on July 16, 1888, while his application was pending, amended his specification in several respects, one of which amendments reads as follows:

"Nor do I claim broadly duplicate indicating wheels geared to move in unison and display simultaneously the same numbers at front and rear of the machine; my invention consisting in the novel combination and arrangement of a duplicate series at front and rear of the machine, each comprising two or more wheels geared and arranged to be simultaneously operated, so that the several numbers in both series shall simultaneously read correctly in the same order from left to right."

The defendant insists that the amendments thus made by the patentee to his claim necessarily narrowed it, so that the only novelty shown, and that upon which the Patent Office allowed the claim, consisted in the two or more groups of keys with their differential action. Whether Koch intended such limitation or not, or whether he incorporated the matter relating to the keys, their character and manipulation, in order to show novelty or not, the fact remains that they are included in the claim in such a way as to constitute them an element of the combination, and their presence cannot be ignored. Water Meter Co. v. Desper, 101 U. S. 332, 337, 25 L. Ed. 1024; Fay et al. v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979.

Complainant's expert has testified that the matter pertaining to the group of keys was inserted, not to overcome the Taylor patent, but to confine the claim to the cash register art. In this, however, he is clearly mistaken, as the claim was thus confined from the beginning and continued to be so confined when the amendment referred to was made. If, then, in the combination disclosed by claim 3, any device which is not the equivalent of the two or more groups of keys called for by the claim has been substituted by the defendant, such substitution does not constitute infringement. Koch's whole device consists in the corresponding wheels in the two series being geared to move in unison and be actuated simultaneously for the purpose expressed by the movement of one appropriate key; this one key thus moved being a single key of one of the groups of keys called for by the claim. Considering the amendments made to the claim while it was under consideration by the examiner, and the disclaimer made by the patentee, it seems to me that the claim is restricted and should be narrowly construed and limited to substantially the devices claimed.

The defendant maintains that its machine is not an infringement of the plaintiff's, because it does not have keys at all, least of all groups of keys. The keys of the Koch patent are individual keys, like those of a piano or typewriter, and are independently actuated. They appear in groups of nine, each key of a group representing only a part of the value or denomination represented by the entire group. Each key moves independently of every other key in its group and independently of every key in every other group. These keys, while operating independently and having the same length of stroke, nevertheless operate differentially, through other mechanism, the appropriate indicating wheels. A key, when moved, moves the corresponding indicating wheels the same distance; that is, if key 5 is struck, the corresponding indicating wheel will move the requisite distance to disclose the figure 5. For keys, the defendant has substituted what are called "segmental levers," which move upward and downward through

slots on the curved front of the machine. The movement of one of these levers a greater or less distance imparts a corresponding movement to the indicating wheels. These segmental levers are the only parts of the defendant's machine which correspond to the keys in the Koch patent; that is, they move the indicating wheels in the defendant's machine, which is the function of the keys in the complainant's machine. Attached to these segmental levers, on opposite sides and at alternate intervals, are what complainant's counsel calls "keys," but which the defendant's counsel calls "handles" or "segments." There is marked upon each of these handles or segments a denomination or value which in some respects corresponds to the denomination or value marked upon the keys of the Koch patent. These handles or segments only serve, however, as guides to the operator to indicate how far, or over what distance, the lever to which they are attached, should be moved. Without these handles the lever could be moved so as to show upon the indicating wheels any particular number or denomination required; but in this case more care would be requisite. With the operator's finger upon a guide, there is no danger that the operator will overrun the number he desires to show; for instance, by putting his finger upon handle 7, and moving the lever downward until his finger strikes the base or guard, he would have moved the lever just far enough to indicate upon the indicating wheels attached to that lever the figure 7. As already stated, it seems clear that the segmental lever, rather than the segments or handles, performs the function of the Koch key. If this be so, there are no groups of keys disclosed in the defendant's machine. There is at the most a single group of levers, but not two or more groups of levers. Each lever, it is true, has nine projections or handles appearing alternately upon either side of it, and each of these has a different numeral on it, but obviously one of these handles cannot be moved without moving all the others, and the lever as well; nor do they move, nor does the segmental lever move, the same distance when the figure 5 is desired to be shown that they do when the figure 7, 8, or 9 is desired. Furthermore, if the lever is moved at all, every segment or handle necessarily moves the same distance.

In the defendant's machine the differential effect is not produced by mechanism at all, but entirely by the manual act of the operator, who moves by his hand and at his pleasure the segmental lever a greater or less distance, while in the Koch patent the differential is produced entirely by mechanism. If the operator upon the Koch machine desired to disclose upon the indicating wheels the figure 5, he must depress key 5, and that key only; while upon the defendant's machine, to accomplish the same result, he need not necessarily touch handle 5, but he may use any other handle, or the segmental lever itself, but in using the latter he will be required, for reasons already stated, to exercise more care. The handles are unnecessary. Their function could be as readily obtained by a notch in the side of the lever, or even by a mark upon its face; hence, while the handles are a convenient, and possibly the most convenient, guide, they are nothing

more. Again, as stated in the brief of the defendant's counsel, these segmental levers "do not each represent one digit, or value of a denomination, or decimal place, as does each key of the Koch patent, but each segmental lever represents an entire denomination or decimal place."

Considerable stress has been laid by counsel upon the appropriate name wherewith to characterize what we have called "handles" or "segments." Their terminology is, however, of small importance. It matters little whether they are called "keys," or "segments," or "guides," or "handles," since, by whatever term they are called, the real question remains: Do they employ the same means, operating in the same way, to effect the same result, that is produced by the keys of the Koch patent? For it may be admitted that the keys or handles and segmental levers of the defendant's machine produce substantially the same result as the keys produce in the complainant's patent, without admitting that the defendant is infringing upon the complainant's device. They may attain the same result, and yet accomplish it by radically different mechanism. To constitute infringement, the two devices must perform the same function in substantially the same way. The complainant's expert claims that there are 36 keys in the defendant's machine and that they are arranged in four groups. He evidently reaches this conclusion by calling each segmental lever, with its handles, a group of keys. I think it has been satisfactorily shown, however, that the segmental levers with the numbers thereon, are not, when taken either collectively or singly, the equivalent of the keys referred to in the patent in suit. This is not only the opinion of defendant's expert, but a close examination of the two devices seems to sustain him. It is true that the parts of the defendant's segmental levers, which have been called "handles" or "segments," were, at the commencement of their manufacture, in a comparatively few instances, and for a short time, called "keys" by the defendant's predecessors in business. This fact, however, is quite unimportant, and has, moreover, been satisfactorily explained. In the cash register art, they are generally otherwise known and designated. In this connection it may be added incidentally that the complainant in its business, in referring to the defendant's device, has, as will be referred to later, called the segmental lever and handles of the defendant's machine a "ladder." It seems unnecessary, however, to discuss the matter further. I have reached the conclusion that the defendant's machine does not infringe the complainant's, since it does not use two or more groups of keys operated by a single key, as required by claim 3 of the complainant's patent.

It is furthermore urged by counsel for the defendant that the complainant should not be permitted to prosecute this suit further because of its delay in instituting it. Laches is a defense which need not be pleaded. It may be raised upon the argument, or the court may, when it appears, be passive and refuse relief. Sullivan v. Portland R. R. Co., 94 U. S. 806, 811, 24 L. Ed. 324; Woodmanse & Hewitt Mfg. Co. v. Williams, 68 Fed. 489, 493, 15 C. C. A. 520; Westinghouse Air Brake Co. v. New York Air Brake Co. (C. C.) 111 Fed. 741. It appears in the case at bar, and is not denied, that the defendant's prede-

cessor began making the machine, which is now alleged to be an infringement of the defendant's patent, in the latter part of the year 1890, or the beginning of the year 1891, and that knowledge of the fact that it was making and selling such machine was brought to the attention of the complainant in 1892 and 1893. This state of facts appears, not only by the testimony of witnesses, but also by exhibits in the form of circulars issued by the complainant to its agents. These exhibits show that the complainant, 11 or 12 years prior to the commencement of this suit, had knowledge that the defendant was making and vending the machines which are now claimed to be an infringement of the patent in suit. They show that the complainant did not then regard the segmental lever and handle attachments of the defendant's machine as an infringement of their key system. This is a fair and necessary inference, not only because the circulars do not disclose any such claim, but also for the reason that the complainant contented itself therein by rather contemptuously characterizing the defendant's device as a "ladder," and pointing out with considerable detail its defects and inefficiency as compared with their own. The question therefore is: Should the complainant at this late day be permitted to change its base and claim a construction of its patent different from that which it seems then to have claimed? We must either assume this change of construction or else find the defendant guilty of gross laches in not having asserted its known right with reasonable promptness. It has already been said that the alleged infringing machines were put upon the market as early as 1891, were known to the complainant in 1892, and that as early as 1893 it had one or more of them in its possession. These facts are not denied, and their consideration leads to the conclusion I have already indicated. The bill of complaint should be dismissed upon this ground, even if there were no other. There is no branch of equity jurisprudence where such an unexcused and unexplained negligence is, or ought to be tolerated, and the rule has very often been applied in patent cases.

In the case of McLaughlin v. People's Railway Co. et al. (C. C.) 21 Fed. 574, a demurrer was sustained for 13 years of laches. In Edison Electric Light Co. v. Equitable Life Assurance Co. (Fed.) 55 Fed. 478, the fact that the patent in suit had been infringed for 11 years was set up by a plea, and the plea was allowed. In the case of Kittle v. Hall (C. C.) 29 Fed. 508, the court, after stating that the case was not free from doubt, declined to dismiss a bill for 7 years' delay in bringing suit; such delay having been partially accounted for and excused. Where a patent had laid dormant for 15 years, having been infringed by the defendant with complainant's knowledge for 7 years without protest, the bill was dismissed. Westinghouse Air Brake Co. v. New York Air Brake Co., supra. See, also, Covert v. Travers Bros. Co. (C. C.) 96 Fed. 568; Meyrowitz Mfg. Co. v. Eccleston et al. (C. C.) 98 Fed. 437; Richardson v. D. M. Osborne & Co. et al., 93 Fed. 828, 36 C. C. A. 610; Woodmanse & Hewitt Mfg. Co. v. Williams et al., supra; Calhoun v. Southern Cotton Oil Co., 121 Fed. 1018, 57 C. C. A. 327. Under the authority

of these cases, I think the knowledge acquired by the complainant that the defendant's predecessor was manufacturing what is now alleged to be an infringing machine, coupled with its acquiescence therein, for a period of 11 or 12 years, without protest or suit, and that during that period the business of the alleged infringer was acquired by the defendant herein, should estop the complainant from maintaining its present suit. In view, therefore, of the unexcused and unexplained delay of the complainant in bringing the suit, the bill should be dismissed.

The view which I have taken of this case renders it unnecessary for me to pass upon the validity of the complainant's patent. Under the evidence, however, it is a grave question whether, because of the prior art, its patent could be upheld.