## GENERAL ELECTRIC CO. v. YOST ELECTRIC MFG. CO.

(District Court, N. D. Ohio, W. D.   June 11, 1913.)

### No. 16.

1. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.

The owner of a patent *held* barred by laches from maintaining a suit for its infringement where defendant had been making and extensively selling the alleged infringing article for seven years prior to the commencement of the suit, to complainant's knowledge, and during all of such time the parties were in litigation over other patents but no claim of infringement of the one in suit was made by complainant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. § 289.*]

2. EQUITY (§ 67*)—"LACHES."

The defense of laches is not tested by time alone. A comparatively short time may constitute laches when the conduct of the slothful is such as to induce others in good faith to expend money and take the risks of enterprise.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 5, pp. 3969–3972; vol. 8, p. 7700.]

In Equity. Suit by the General Electric Company against the Yost Electric Manufacturing Company. On final hearing. Decree for defendant.

Samuel O. Edmonds, of New York City, and Julian H. Tyler, of Toledo, Ohio, for complainant.

Wilber A. Owen, of Toledo, Ohio, and Robert H. Parkinson, of Chicago, Ill., for defendant.

KILLITS, District Judge. The bill in this case was filed August 16, 1909. It alleges that the complainant, a corporation, is the assignee of letters patent for improvements in electric lamp sockets, granted to one Sargent in January, 1901, and that the defendant, a corporation, is infringing the claims of this grant.

The Sargent patent has been adjudicated in the Third Circuit in the case of General Electric Co. v. E. H. Freeman Electric Co., 190 Fed. 34, affirmed 191 Fed. 169, 111 C. C. A. 646. The defense in that case was not as extensive as in the case before us; the additions here being of such character as to require the court, were it necessary to a decision here, to re-examine the question of the validity of the Sargent patent. As we consider the record before us, however, we need not pass upon the defense that the Sargent patent is invalid.

It is alleged that the defendant infringes three claims, which read as follows:

"(1) In an article of substantially the character described, the combination with a cap provided with interior retaining means, of an insulating-lining made yieldable so that it can be forced over the retaining means, which lining is held thereby in the interior of the cap."

"(11) In an article of substantially the character described, the combination with a cap, of projections extending in the interior thereof, and an insulating-lining adapted to be sprung over said projections, said lining being held by said projections within the cap."

"(15) In an article of substantially the character described, the combination with a cap, having a hole in its crown for the passage of the wires leading to the lamp, of projections extending in the interior of the cap, and an insulating-lining having a hole registering with the hole in the cap, said lining being held by said projections within the cap."

We find little difficulty in deciding that there is no infringement, in defendant's construction, of claims 11 and 15. The alleged invention protected by the Sargent patent consists of supporting in the cap of a lamp socket a thin wall of insulating fiber by means of "projections extending in the interior" of the cap, to quote from claims 11 and 15. The defendant uses a similar thin sheet of insulating fiber in its cap and supports it by pressing it into the cap so that its circumference engages the hollow of an annular bead extending outwardly from the cap. No portion of this bead extends within the cap itself; both the upper and lower continuations of the bead with the walls of the cap having no less diameter than the cap itself at its greatest circumference. We are decidedly not able to say, upon the consideration so far given, that the complainant has removed the burden of proof and has, by a preponderance of the evidence, established that the defendant is, in its construction, infringing claim 1, although, broadly considering such claim, it may be plausibly argued that defendant is within the terms thereof.

However, the Sargent specification uses language tending to compel the court to construe the claims somewhat narrowly and almost requiring that they be applied to constructions which are mechanically similar to that employed by the patentee, for these specifications say:

"For the purpose of this invention the arms C are provided with shoulders S near their lower ends, and * * * the insulating lining A is cut away at T, so as to fit the arms above these shoulders."

Nothing of this sort, nor anything nearly like it, appears in defendant's construction. We leave open, however, the determination of the scope of claim 1, because in our judgment, the question of its application, so far as this defendant is concerned, must be disposed of on another proposition.

Defendant amended its answer by adding the following defense:

"(16) Defendant, further answering, says that it is the successor of the Yost Electric Manufacturing Company, a corporation of West Virginia; that said company was the successor to the Yost-Miller Company, a corporation of Ohio, and that the business of manufacturing and selling electric lamp sockets has been carried on continuously in Toledo, Ohio, by defendant and its predecessors since prior to the year 1902; that the device now complained of was, without objection from complainant, adopted in 1902 by defendant's predecessors as a substitute for a prior device which complainant had charged to be an infringement of said Sargent patent and has been manufactured and sold continuously and extensively by defendant and its predecessors since its said adoption and down to the filing of this suit, and in the belief that they had the right so to do, and without objection by complainant until shortly prior to the commencement of this suit; that defendant and its predecessors have with the full knowledge of complainant been manufacturing the device against which the charge of infringement is made continuously since the latter part of 1902 down to the filing of this suit and have during said entire period sold the same openly and notoriously and have built up an extensive business throughout the United States in the sockets containing the same; that complainant asserted no adverse right under the patent here in suit with respect to said manufacture of defendant and its predecessors until shortly prior to the filing of this suit; and that complainant is now estopped by its long acquiescence in said manufacture from asserting that the same is an infringement of the patent in suit, and has been guilty of such laches as concludes it against any right of relief in equity."

We take it as fundamental that one enjoying a monopoly involved in the grant of a patent must be reasonably diligent in protecting that monopoly and must not pursue that course with reference to it which may mislead others into positions of disadvantage when he would choose to conceive broader rights in his grant with a resultant change of conduct on his part.

That a patentee may sleep upon his rights and may lose his right to insist on his monopoly is well settled by the cases hereinafter cited, and it remains for the court to consider whether the facts in this case bring it within that principle of estoppel.

For a period of more than six years, possibly more than seven years, complainant and defendant and defendant's predecessors had been engaged in litigation directly or indirectly touching defendant's manufacture of lamp sockets and the insulation thereof by means of insulating fiber, before the beginning of this suit.

In 1902 the Perkins Electric Switch Manufacturing Company, an associate of complainant in the Manufacturers' Association, sued Buchanan & Co., a customer of defendant's predecessor, for infringing on the Perkins patent for insulating lamp sockets, in the Eastern District of Pennsylvania, where that patent was adjudicated. 129 Fed. 134. In the same year complainant notified the Yost-Miller Company, defendant's predecessor, that the manufacture of the Dixon socket by the Yost-Miller Company was an infringement of the Sargent patent, whereupon the manufacturer of the Dixon socket was discontin-

ued by the Yost-Miller Company, and the construction substantially now complained of in the particulars involved in this case was placed upon the market by the Yost-Miller Company and was continued to be manufactured in large numbers and placed upon the trade quite generally during the seven years intervening before this suit was brought.

In 1903 the complainant, being the assignee of a patent granted to one Painter, sued, within a month after the grant, the defendant, which had succeeded to the Yost-Miller Company, in the Circuit Court of the Southern District of New York for infringement of the Painter patent in the manufacture by defendant of sockets substantially embodying the construction now complained of. In this suit the Painter patent was declared invalid. (C. C.) 131 Fed. 874; 139 Fed. 568, 71 C. C. A. 552.

In April, 1904, the Painter litigation still subsisting, the Perkins Electric Switch Manufacturing Company sued the defendant in this court, alleging infringement of the Perkins patent by defendant's manufacture of sockets substantially embodying the construction now sued on. This case was heard in this court in June, 1909, and was thereafter passed upon by the Circuit Court of Appeals adversely to the complainant therein, whose rights had been succeeded to by the present complainant. 179 Fed. 511, 103 C. C. A. 116.

The facts convince the court clearly that during this period prior to August, 1909, the complainant should be charged with knowledge both that defendant was manufacturing the socket under dispute in large quantities and also from time to time enlarging and extending its investments and marketing its product in increasing quantities, and we hold that complainant was charged with a duty, in fairness towards defendant, to have exercised its plain right in the practice to join with its case on the Painter patent, in 1903, its claims under the Sargent patent, if it then conceived it had such claims as it is asserting now, or to have asserted such claims under the Sargent patent at some time considerably anterior to August, 1909, and that its conduct, especially in suing on the Painter patent without alleging any infringement of the Sargent patent, after vindicating the Sargent invention as against the Dixon construction, might well have been interpreted by the defendant as being the view of the complainant that this Sargent claim No. 1 was not considered by it to extend to such construction as that employed by defendant.

Complainant's conduct since the beginning of this action does not tend to repel the impression that its previous nonaction should be imputed to it for laches. It rested for nearly two years in this court without pressing a demand for a temporary injunction against defendant to stop the manufacture of the disputed construction. Just a short time previous to the beginning of this action complainant had brought an action against a customer of defendant in the Southern District of New York, joining defendant therein on the theory that such customer was defendant's agent. The action was soon dismissed against this defendant for want of jurisdiction, whereupon the present case in this court was commenced. Thereafter nothing was done in the New

York case either until in 1911, when, failing to have its belated application for temporary order here promptly allowed, it became active in the eastern proceeding, pressing a motion therein for a temporary order. The dilatory tactics of complainant impelled defendant to obtain an order of this court to proceed with the taking of testimony, nothing having been done again even to expedite the New York hearing after the obtaining of a temporary order against defendant's customer. The peremptory order here to complete the case for submission apparently caused complainant to revive an interest in the other case, and the two actions thereafter proceeded to completion practically together. Thereupon, for some reason which does not, whatever it is, appeal to this court to excuse the dilatory tactics employed, the complainant seemed to prefer, and apparently bent all its energies to obtain, adjudication first in the case in New York; many excuses having been offered for delay in the final hearing here which apparently had no other relation except to the New York situation.

We refused a temporary injunction in October, 1911, without opinion, on the feeling that complainant was even then unduly delaying its assertion of right, and that feeling was but intensified by the tactics employed subsequent thereto; the hearing finally being had as the result wholly of the activities of the defendant.

The explanation for the delay attempted by counsel for complainant in his brief, based on the pendency of the Freeman Case in the District of New Jersey (190 Fed. 34), is not satisfactory to the court, knowing, as we do, that such delays were resented by defendant, whose counsel at no time acquiesced in the use of the New Jersey case as the means of delaying action in the instant case.

Were complainant's rights clearly infringed, we would not attempt to say that its conduct amounted to such laches extending over a sufficient time to defeat its right of action, but, as we have suggested, the Sargent patent is not only in its terms susceptible to the construction which defendant has placed upon it, but its terms are also consistent with an entertainable impression that complainant, in ignoring for so many years defendant's manufacture of its socket, also so narrowly construed the claims. As Judge Mayer, in Mosler v. Lurie, 200 Fed. 433–439, observes:

[2] "The defense of laches is not tested by time alone. Lapse of time may be well explained; but, on the other hand, even a comparatively short time may constitute laches when the conduct of the slothful is such as to induce others in good faith to expend money and take the risks of enterprise."

Here complainant cannot well explain the lapse of time even, and its conduct generally, as noted above, is such as to make it entirely possible that a comparatively short lapse of time would be sufficient to create an estoppel.

The Circuit Court of Appeals of this circuit in Woodmanse & Hewitt Manufacturing Co. v. Williams, 68 Fed. 489, say, at page 493, 15 C. C. A. 520, at page 524:

"One who invokes the protection of equity must be 'prompt, eager, and ready' in the enforcement of his rights. Equity will not encourage a suitor who has long slept over his rights."

The court then quotes with approval the language of Judge Coxe in Kittle v. Hall (C. C.) 29 Fed. 511, that:

"Long acquiescence and laches can only be excused by proof showing excusable ignorance or positive inability to proceed on the part of the complainant, or that he is the victim of fraud or concealment on the part of others."

It is manifest in the instant case that complainant cannot plead, upon the facts before us, "excusable ignorance" that defendant and its predecessors were manufacturing the disputed construction, or "positive inability to proceed" against defendant, or that it was "the victim of fraud or concealment on the part of defendant." None of the essentials of an excuse for complainant's failing to act on its Sargent patent for so many years while it was asserting its rights on other grants is presented here.

Cases on this line, as applied to patent suits, are numerous. Westinghouse v. Wagner (C. C.) 129 Fed. 604, doctrine approved by Circuit Court of Appeals in 173 Fed. 361, 97 C. C. A. 621; American Tube Works v. Bridgewater Iron Works, 132 Fed. 16, 65 C. C. A. 636; McGill v. Whitehead & Hoag Co. (C. C.) 137 Fed. 97; Germer v. Twentieth Century Heating & Ventilating Co. (C. C.) 157 Fed. 842; Richardson v. Osborne Co., 93 Fed. 829, 36 C. C. A. 610; Westinghouse Air Brake Co. v. New York Air Brake Co. (C. C.) 111 Fed. 741; Starrett v. Stevens (C. C.) 96 Fed. 244; National Cash Register Co. v. Union Computing Co. (C. C.) 143 Fed. 342.

We feel that the complainant, as against the defendant, is not entitled to a decree of infringement of its claim 1 because of the circumstances above alluded to, and that the bill should therefore be dismissed at the costs of complainant.