## THACHER v. BOARD OF SUP'RS OF POLK COUNTY, IOWA, et al.

### (District Court, S. D. Iowa, C. D. September 12, 1916.)

1. PATENTS ⬦312(3)—PRIOR PATENTS—EVIDENCE OF ANTICIPATION OF INTERVENTION.

    Proof to show that a patentee's invention antedated an earlier patent must be satisfactory and convincing, if not beyond a reasonable doubt, in order to warrant relief.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 548, 549; Dec. Dig. ⬦312(3).]

2. PATENTS ⬦328—CONSTRUCTION—INFRINGEMENT—IMPROVEMENT IN CONCRETE ARCHES.

    The Thacher patent, No. 617,615, for an improvement in concrete arches, consisting of a combination with abutments and a concrete arch spanning intervening space, of a series of metal bars in pairs, held, in view of a prior patent, proceedings in the Patent Office, and the self-imposed limits in the patent and the claims to a combination in which the bars of each pair are physically and mechanically independent of each other, and, as so limited, not infringed.

3. PATENTS ⬦289—ENFORCEMENT—ESTOPPEL.

    Where a patent for an improvement in concrete arches was issued in 1899 and the patentee, though in close touch with the progress of concrete construction, thereafter allowed municipalities and individuals to proceed in good faith to erect structures which he subsequently claimed infringed his patent, but brought no suit for infringement until shortly before the patent expired, his laches bar recovery, after the expiration of his patent, against a municipality which, by reason of his acquiescence, erected a structure that the patentee asserted was an infringement.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. ⬦289.]

In Equity. Bill by Edwin Thacher against the Board of Supervisors of Polk County, Iowa, and others. Bill dismissed.

Frank H. Drury, of Chicago, Ill., and E. J. Kelly, of Des Moines, Iowa, for complainant.

Wallace R. Lane, of Chicago, Ill., and George Cosson, Henry E. Sampson, Henry & Henry, and Geo. A. Wilson, all of Des Moines, Iowa, for respondents.

WADE, District Judge. This case involves the validity and infringement of United States patent No. 617,615, issued to complainant, Edwin Thacher, January 10, 1899, relating to concrete arches for

bridges, or vault covering, or for spanning openings in building construction.

[1] I do not pass upon the validity of the patent in so far as the same was affected by the prior art, or previous publication, except as the same is affected by the Von Emperger patent. I agree with Judge Rose, in Thacher v. Mayor, 219 Fed. 909, that the patent to Von Emperger embodies the idea upon which the plaintiff procured his patent, and I hold that the Von Emperger invention was an anticipation of the patent granted to the plaintiff.

I also hold that the proof furnished to the Patent Office to establish the fact that the plaintiff's invention antedated the Von Emperger invention is not, in view of the evidence in this case, sufficient to justify a court in sustaining the claim of the plaintiff. Such proof must be at least "satisfactory and convincing," "if not beyond a reasonable doubt." Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456; Torrey v. Hancock, 184 Fed. 61, 107 C. C. A. 79. The proof in this case is not "satisfactory" nor "convincing." It is too uncertain to justify a court in setting aside letters patent, solemnly issued by the government. So that, in my view, the patent to plaintiff is invalid because anticipated by the Von Emperger invention described in his patent. In truth I am convinced that the only invention upon which the plaintiff procured a patent was developed by him, not prior to the Von Emperger patent, nor even at the time he filed application for his own patent, but that it really was invented by him, if at all, under the spur of repeated rejections by the Patent Office of his application for a patent upon an invention entirely different from the one for which patent finally issued.

[2] I agree with Judge Thomas in Thacher v. Transit Construction Co., 228 Fed. 906, that the Thacher patent is specifically limited by the language "each bar of a pair being independent of the other." The proceedings in the Patent Office, and the proof as to the prior art, clearly convince me that it was only by reducing his claims to this specific description that plaintiff ever procured a patent; in fact, a broader construction would, in my judgment, render the patent void because of the prior art, aside from the Von Emperger patent. But whether it would or not, the proceedings in the Patent Office clearly make effective the self-imposed limitation that the bars, to come within the scope of the patent, must be each "independent of the other." To quote from Judge Thomas in Thacher v. Transit Co. Case, supra:

"Moreover, the proceedings in the Patent Office, preceding the issue of the patent in suit, confirmed the defendant's contention that it was the feature of physical and mechanical independence or severance which led the Patent Office to allow the patent. The claims presented in the original application, and subsequently in the prosecution of the claim, were repeatedly rejected by the Patent Office, and the Milliken patent was cited as a reference, and the patent was finally allowed only when the claims were put in their present form, with the limitation in each claim of 'each bar of a pair being independent of the other.' I cannot accede to the plaintiff's contention that this was a broadening of the claims. On the contrary, I hold that it was not. It was manifestly narrower, and was accepted by the patentee as a condition precedent to the grant of the patent."

Under this construction of the plaintiff's patent, even if it were valid, there was no infringement in this case. The bars used in the constructions in issue are not "each independent of the other." The bars are part of a rigid, or semirigid, structure, consisting of longitudinal and cross-bars and lattice bars, all firmly bound together by wire ties at intersections. As Dean Marston expresses it:

"They are tied together by the transverse bars and by the lattice bars in such manner that they must act together."

So that the very element of independence of each bar, upon which Thacher procured his patent, is not present; nor are the cross-bars and ties a mere attempt to evade. The cross-bars, lattice bars, and ties serve a purpose. This purpose is expressed by Dean Marston in part as follows:

"A. The longitudinal bars in the model served directly to take the compressive and tensile stresses in the concrete and to assist in connection with the strains and stresses when the arch deflects after the manner of a beam. The cross-bars, including the transverse bars and also the lattice bars, serve to tie the reinforcing rigidly together and transmit the stress from one bar to another so as to make it act in monolithic manner. The cross-bars and the transverse bars also serve to hold the reinforcing rigidly in place during construction and during the hardening period of the concrete. Q. In that connection, will you state whether or not the longitudinal bars are independent of each other, or not? A. They are not in this design. Q. For what reason? A. They are tied together by the transverse bars and by the lattice bars in such manner that they must act together. Q. If I understand you correctly, the whole structure is tied together with the transverse bars, and longitudinal bars and the wiring, and the longitudinal bars act as a unitary structure? A. Yes. Q. And all parts act simultaneously when actually in the bridge? A. That is true. These cross-bars assist in making it act that way."

Dean Marston further says:

"Q. That bridge was constructed under the Melan patent, not the Thacher? A. Not the Thacher patents. Fourth. The longitudinal bars and the other bars in this structure will have better adhesion to the concrete and show greater efficiency by reason of being held rigidly in place during the period of hardening of the concrete. If at the time of construction these cross-bars should be removed as soon as the concreting reaches them, then as the concreting in the next section proceeded, the longitudinal bars in the soft concrete would be subject to displacement and movement until the concrete hardened, and this would injure their adhesion to the concrete and possibly push them out of the place in which they were intended to be according to the design. Fifth. In designing reinforced concrete bars which are subject to bending stresses, such as beams, there are usually shearing stresses, and it is a standard practice in designing reinforced concrete beams to use metal stirrups at right angles to the longitudinal reinforcing to keep the concrete from cracking. The combination of the shearing stresses and the longitudinal tension stresses cause a tension stress in an inclined direction, and these bars are intended to prevent cracking and shearing therefrom. Sixth. Concrete is an elastic material, and when it is deformed in one direction, it tends to deform in every direction at right angles. When compressed, it tends to swell out in every direction at right angles to the line of compression. If it could be restrained in every direction at right angles, it would be much stronger to resist deformation. Any reinforcing attached to the longitudinal rods in directions at right angles to them will have some effect upon the stresses in those rods, owing to the restraint which has been produced in the lateral deformation of the concrete."

I am convinced upon the whole testimony that the cross-bars and lattice bars and ties have functions to perform. I cannot agree with the apparent theory of Mr. Thacher as a witness that these serve only the purpose of maintaining "independent" bars in place during the construction. If anything were necessary to convince me that the construction used by the defendants does not consist of pairs of bars, each bar "being independent of the other," I find it in the letters written by Thacher himself through many years, while a member of the Concrete Steel Engineering Company, in which he repeatedly recites the fact:

"The Melan system, as we have always understood it, [words not shown upon copy] stiff ribs, whether I beams or 4 angles latticed. The Von Emperger system can use either stiff ribs or bars for reinforcement. It was gotten out as an improvement on the Melan system, and really is an improvement, as the ribs are firmly connected together by radial and diagonal bracing."

In one place he says:

"The stiff ribs, built according to the Von Emperger system, are much superior to any bar system, not excepting even my own."

These appeals by Thacher for use of the Melan and Von Emperger types in preference to his own, and the failure to use the strictly independent bar system in any construction, so far as the record discloses, convinces me that Thacher himself recognizes that cross-bars and ties and lattice bars used with longitudinal bars have a function and a purpose in concrete construction; in fact it is quite apparent from the record in this case that, limited strictly to the bars independent of each other, in no manner connected, or held together, or held apart, the Thacher invention is not, and has not been, of practical use.

Without further discussion of the evidence, I am convinced that there is no infringement in this case.

[3] I am also of the opinion that the plaintiff is estopped by laches from asserting any such construction of his patent as would bring the structure involved in this case within its meaning.

This patent was issued in 1899; it expired before this case was tried. During all the years from the issuance of the patent up to the present, the plaintiff has been in close touch with concrete construction all over the United States. For years bridges and other structures have been erected which come as near infringing the plaintiff's patent as do the structures in controversy, and no action was ever brought by the plaintiff until 1913 or 1914—14 or 15 years after the issue of his patent. The plaintiff permitted individuals and municipalities to proceed, apparently in good faith, with private and public work, and made no protest until a comparatively short time before his patent expired. In fact I am convinced that the plaintiff's present view of the construction of his patent as including structures such as those in controversy is a discovery made by him or some one else within recent years. I do not believe, during all these years, when he quietly allowed those he now claims to be infringers to proceed without asserting any right, that he understood or believed that these struc-

tures came within the claims of his patent. A court of equity should not now proceed to a decree which would enable the plaintiff to pursue individuals, cities, counties, and states with suits for damages for the infliction of a wrong which he, by his acquiescence, invited. As Judge Ray said, in Safety Car Heating Co. v. Consolidated Car Heating Co. (C. C.) 160 Fed. 476:

"There can be no question that the complainant knew just what defendant was doing. There was no possible concealment or covering up. When those devices went into use they were plain to see, and open to inspection by all the world, and it is impossible to suppose that complainant did not keep its eye on what defendant was doing. I do not think the complainant ever expected to rely on the Dixon patent as a valid patent, or as broad enough to cover the defendant's construction. The following cases are sufficiently in point, and all are directly applicable: Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049; Richardson v. D. M. Osborne & Co., 93 Fed. 828, 36 C. C. A. 610; McLaughlin v. People's R. Co. (C. C.) 21 Fed. 574; Woodmanse & Hewitt Mfg. Co. v. Williams, 68 Fed. 489, 15 C. C. A. 520; Meyrowitz Mfg. Co. v. Eccleston (C. C.) 98 Fed. 437; Starrett v. Stevens Arms Co. (C. C.) 96 Fed. 244—all patent cases; Speidel v. Henrici, 120 U. S. 377, 387, 7 Sup. Ct. 610, 30 L. Ed. 718; Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036; Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 697, 18 Sup. Ct. 223, 42 L. Ed. 626; Gildersleeve v. N. M. Co., 161 U. S. 573, 16 Sup. Ct. 663, 40 L. Ed. 812; Gill v. U. S., 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480."

In the language of Judge Ray, I do not think the complainant ever expected to rely on the Thacher patent as a valid patent, or as broad enough to cover the defendant's construction.

There will be a decree, dismissing the plaintiff's bill, and judgment against the plaintiff for costs.

Counsel for defendants will prepare decree, and submit to counsel for plaintiff, who will have ten days in which to file objections to the form thereof.