**REMINGTON RAND, Inc. v. ACME CARD SYSTEM CO.**

No. 928.

District Court, S. D. Ohio, W. D.

Aug. 4, 1937.

Appeal Dismissed Oct. 11, 1939.

See 106 F.2d 1014.

Edwin T. Bean and Richard W. Treverton (of Bean, Brooks, Buckley & Bean) of Buffalo, N. Y., Theodore Greve (of Allen & Allen) of Cincinnati, Ohio, for plaintiff.

William F. Hall, of Washington, D. C., Lee J. Gary, of Chicago, Ill., and Edmund P. Wood and Truman A. Herron (of Wood & Wood) of Cincinnati, Ohio, for defendants.

NEVIN, District Judge.

This is a patent suit brought in the usual form in which plaintiff, Remington Rand, Inc., a Delaware Corporation, claims that the defendants have infringed two United States Letters Patent owned by plaintiff. The Letters Patent in question are No. 1,407,948, issued February 28, 1922 (application filed February 13, 1920) to Benjamin G. Rand, and No. 1,429,628, issued September 19, 1922 (application filed August 9, 1920—Amendment inserting certain specifications and Claim 20, filed March 31, 1922) to James H. Rand, Jr. Plaintiff prays for an injunction and an accounting.

Defendants are the Acme Card System Company, an Illinois Corporation, and Le Roy A. Franklin, of Cincinnati, Ohio. Mr. Franklin is the agent of the Acme Company in Cincinnati, where he has sold Acme cabinets of the kind charged to infringe both patents in suit.

Jurisdiction of the court over the subject matter and over both defendants is admitted. Plaintiff's title to the patents in suit also is admitted by stipulation. The claims of the patent on which plaintiff relies are claims 1 and 11 of the Benjamin G. Rand patent No. 1,407,948 and claim 20 of James H. Rand, Jr., patent No. 1,429,628.

Plaintiff filed its bill on July 3, 1935. On December 19, 1935, defendants filed their answer. In their answer defendants deny infringement of either patent, and aver that Letters Patent No. 1,407,948 are invalid because the subject matter thereof is shown and described in certain United States and foreign patents, which are set forth in the answer, and that patent No. 1,429,628 likewise is invalid because the subject matter thereof is shown and described in certain United States and foreign patents, which are set forth in the answer.

Defendants further allege that the disclosure shown and claimed in patent No. 1,407,948, is not the sole invention of Benjamin G. Rand and that the disclosure shown and claimed in the patent to James H. Rand, Jr., No. 1,429,628, is not the sole invention of James H. Rand, Jr.

Defendants also allege "that plaintiff and its predecessors in business have been guilty of laches from the date of issue of each of the patents in suit down to the filing of the bill of complaint, and are not entitled to an injunction and accounting; that plaintiff, by misleading defendant, Acme Card System Company, to the latter's disadvantage by silence and inaction is now estopped to maintain this action."

These same two patents were before this court for consideration in Remington Rand, Inc., v. International Visible Systems Corporation, No. 725 Equity (Cincinnati). In that suit plaintiff claimed that defendant there also infringed these patents. In that action defendant, International Visible Systems Corporation, denied infringement and challenged the validity of the patents on substantially the same grounds as are relied upon here. The same claims in the respective patents that are in issue in the instant case were also (together with some others) in issue in case No. 725—the International Visible Systems Corporation case.

On June 21, 1933, this court rendered a decision in cause No. 725, in which it held that claims 1 and 11 (being the claims now in issue) of Benjamin G. Rand, No. 1,407,948, are valid. It also held that claim 20 (in issue here) of the James H. Rand, Jr., patent No. 1,429,628, is valid. It further held in the International Visible Systems case that the defendant in that case infringed these claims (and others) of these two patents, respectively. The International Visible Systems case was taken on appeal to the United States Circuit Court of Appeals of this (Sixth) Circuit. On June 6, 1935, the Court of Appeals affirmed the decree of this court. 6 Cir., 78 F.2d 606.

In its decision in the International Visible Systems case this court, referring to the subject matter of the patents, stated —and the same is true here: "Both patents are directed to the construction of cabinets or casings into which drawers or panels are slidably fitted and the means for supporting the drawers or panels relatively to the cabinet or casing. In Patent No. 1,407,948, Benjamin G. Rand states that: 'This invention relates to an index file or cabinet for signature cards, account cards and other index matter', and says that the objects of the invention, among other things, are to provide a cabinet which en- ables the drawers or panels containing the cards to be withdrawn from the cabinet and supported in an inclined position for convenient inspection or posting; to provide improved means for enabling each drawer or panel to be entirely detached or removed from the cabinet to permit the same to be carried about if desired; to provide a cabinet which affords maximum protection against fire and which can be produced at a moderate cost; and to provide the panels with simple means for facilitating the elevation of the free edges of those cards located adjacent to the front walls of the panels. In Patent No. 1,429,628, James H. Rand, Jr. states that: 'This invention relates to cabinets and more particularly to card index or record cabinets', and he says that some of the objects of his invention are to provide a card cabinet and slides or drawers of relatively light weight and sturdy construction; to improve the construction of cabinet and slides so that the slides may be readily removed when desired; and to provide means whereby the slides are guided to positions within the cabinet without endangering or injuring or marring the cabinet by unskillful handling; and to improve the construction of the label or designation card holders."

The claims in issue in the case at bar are printed in full in foot-notes to the decision just referred to of the Court of Appeals. Claims 1 and 11 of the Benjamin G. Rand Patent No. 1,407,948 appear in 78 F.2d on page 607, and claim 20 of the James H. Rand, Jr., patent No. 1,429,628 appears in 78 F.2d on page 608. It is unnecessary, therefore, to repeat them here.

Defendant herein, Acme Card System Company, avers in its answer "that the construction of its cabinets is substantially different from that disclosed and claimed in the patents in suit; that 'the patents in suit are improvements and secondary'; that this construction of the patents was adopted by the Sixth Circuit Court of Appeals in the case of International Visible Systems Corporation v. Remington Rand, Inc., 78 F.2d 606; that thus construed the cabinets sold by defendant, Acme Card System Company, do not infringe said patents or either of them."

Defendants further allege that each of the patents in suit is invalid because of certain prior United States patents which are set forth in their answer, but which

they claim were not before either this court or the Circuit Court of Appeals in the International Visible Systems case.

Plaintiff submits that defendants' cabinet is a substantial duplicate of the structure shown in the Benjamin G. Rand Patent No. 1,407,948, and that it clearly infringes claims 1 and 11, and that defendants' cabinet embodies the invention of and infringes claim 20, of the James H. Rand, Jr., Patent No. 1,429,628; that the asserted anticipations are no more pertinent to the claims in suit than those in the previous litigation and that the alleged prior invention by one Frank D. Powell, now residing in Freeport, Illinois, an allegation as to which is set out in the answer, is wholly insufficient to establish a defense as it was, as plaintiff claims, merely an experiment of unproven date which was finally abandoned, and that because in the International Visible Systems case both patents have heretofore been held valid, plaintiff is entitled to the relief prayed for.

Defendants insist that both this court and the Court of Appeals were led to believe that "a feature of great commercial value in cabinets marketed by the plaintiff, ostensibly under the patents in suit, is that they are so contrived that adjacent drawers, or panels, can be moved laterally in opposite directions for facilitating the examination and other uses of the cards", and that it was because of the stressing of this feature that the patents were sustained by this court and the Court of Appeals in the International Visible Systems case, whereas, defendants claim "the fact is that the feature is of no value, as is shown by the fact that it is not referred to in any of plaintiff's extensive advertising literature, textbooks, or the like, is not referred to at all in the Benjamin G. Rand patent in suit, is not referred to at all in the application as filed for the James H. Rand, Jr., patent in suit, is the very antithesis of the teachings of its specification as filed, and is impossible of attainment with the structure shown in the drawing of the patent, and no purchaser of plaintiff's equipment (or the accused cabinet) testified that he ever used the feature, or even heard of it, either prior, or subsequent, to his purchase of the equipment."

Defendants further assert "that this alleged paramount feature of plaintiff's cabinet is claimed only in claim 20 of the James H. Rand, Jr., patent, and such subject matter was not claimed in the application for that patent until practically three years subsequent to the date The Rand Company, with which Benjamin G. Rand was associated, had in wide commercial use its 'Traco' cabinets, in which, admittedly, the drawers are laterally shiftable. But the feature has no usefulness in that cabinet and is not mentioned in the advertising literature relating to it." And also that "James H. Rand, Jr., never overcame in the Patent Office the prima facie priority of Benjamin G. Rand as to the subject matter of claim 20, which priority is established by the disclosure of the subject matter of claim 20 in the Benjamin G. Rand patent here in suit. The application therefor not only has an earlier date than the application for the James H. Rand, Jr., patent, but it has a date more than two years earlier than the date of the amendment which added claim 20 to the James H. Rand, Jr., application, and the description in the patent specification on which it is based."

In the instant case it is agreed that the James H. Rand, Jr., patent and invention is senior in relation to the Benjamin G. Rand patent. In the record (p. 14) appears the following:

"Mr. Wood: It is the statement, then, of plaintiff that the James H. Rand, Jr. patent and invention is senior in relation to the B. G. Rand patent. Is that the understanding on the record?

"Mr. Bean: I consider that to be the understanding.

"Mr. Wood: That is all right."

Defendants assert that while this is plaintiff's position in the instant case, plaintiff submitted proofs and arguments in the International Visible Systems case in order to show that the Benjamin G. Rand patent and invention is senior to the James H. Rand, Jr., patent, and finally defendants submit on the question of "the lateral shiftability of the drawers" that in the instant case "there is not a scintilla of evidence that anyone ever did shift the drawer laterally, for inspecting or otherwise using the cards in the accused cabinet. No users so testified. No observer testified to having observed any such thing. Indeed the evidence establishes, affirmatively, that the lateral shift of the drawers, for posting, or inspecting, records, would obtain no

useful effect and would most likely result in the detachment of the shifted drawer from the cabinet."

This somewhat lengthy reference is made to all the foregoing because the question of "lateral shiftability" was stressed both in this court and in the Court of Appeals in the International Visible Systems case, and the decision by the Court of Appeals shows beyond doubt that this feature weighed heavily in the final determination upon the question of the validity of claim 20 of the James H. Rand, Jr., patent.

If it were not for the conclusion to which this court has come, the court would feel it incumbent to discuss fully and ultimately to determine a number of questions that have been raised by the parties in their pleadings and briefs. In view, however, of its conclusion, the court deems it unnecessary to discuss any of these questions further or to render any decision on any except the one question which is determinative of the case. This is the question that is raised by the defense of laches. If that defense is established, then, as just stated, that is in and of itself determinative.

In view of the facts and the applicable law, the court is of opinion that that defense is so well established in this case as to require dismissal of plaintiff's bill.

The record shows the pertinent facts, either as stipulated or agreed to in the record at the trial or clearly established by the proofs, to be substantially as follows: defendant, Acme Card System Company, an Illinois Corporation, was organized in 1917, succeeding a South Dakota corporation which was formed in 1914. It manufactures and markets a variety of visible records and equipment. Among other things, an overlapping record card type of equipment which is characterized by metallic hangers, from which record cards are hung, detachably mounted in panels, or drawers, which may be supported in any desirable way. Its equipment which was marketed as early as 1915 is illustrated in defendants' Exhibit Z. Its cabinet of the posting, or overlapping record card type, is illustrated in its catalogue, defendants' Exhibit DD-11.

The record discloses that defendant, Acme Card Systems Company, commenced the commercial marketing of the alleged infringing cabinets in July 1921—a date earlier than the patent grants, and that it had done so in active competition with the plaintiff and its predecessors in title to the patents in suit.

It is agreed that defendants were never notified that its cabinet was considered to be an infringement of the Benjamin G. Rand patent No. 1,407,948, and that its first notice of any alleged infringement of that patent was when this suit was filed.

Defendants did receive a letter dated October 3, 1922, stating that its cabinet "must be discontinued" because of patent No. 1,429,627 (not in suit here) issued to American Kardex Company upon an application filed by James H. Rand, Jr., and Vernon F. King, dated December 2, 1918, and patent No. 1,429,628 (here in suit) issued to James H. Rand, Jr. That letter is defendants' Exhibit A-2 and reads as follows:

"Tonawanda, N. Y.
October 3, 1922

Acme Card System Co.,
6 North Michigan Ave.,
Chicago, Ill.

Attention Mr. F. H. Johnson, Gen. Mgr.
Gentlemen:

Relative to the so-called visible card record cabinets, which you are now offering for sale, we hereby give due notice that the further manufacture and sale of these cabinets must be discontinued in view of United States Patent No. 1429627 and 1429628, applied for December 2nd. 1918 and issued September 19th, 1922.

Yours very truly,
American Kardex Company.
J. H. Rand Jr.
JHR JR.              President."
EPG

On October 5, 1922 (Dft.Ex. A-3) defendant Company, through its patent counsel, Frank L. Belknap, wrote to James H. Rand, Jr., acknowledging receipt of his letter of October 3, 1922. Defendants' letter, insofar as it is pertinent to the issues here, reads as follows:

"October 5th, 1922.

Mr. J. H. Rand Jr.,
American Kardex Company,
Tonawanda, New York.

My dear Mr. Rand:

Your letter of October 3rd to the Acme Card System Co., stating that the latter is infringing your patents Nos. 1,429,627 and 1,429,628, has been handed to me for reply. I have carefully examined these

patents. Either you do not understand the limitation of the claims in these patents, or else you are not familiar with the details of the construction of the Acme Cabinets. I am satisfied that under no theory of construction can these claims be held to cover the Acme Cabinets, and have so notified my client. The situation is so clear to me that I am entirely willing to sit down with you and your attorney and explain our structure in detail and go over the claims with you solely for the purpose of avoiding needless expense in litigation. * * *

Yours very truly,
FLB–L.　　　(Sgd)　Frank L. Belknap."

From this time forward until this suit was filed July 3, 1935—substantially thirteen years after the date of Mr. Belknap's letter—neither plaintiff nor its predecessors in title to the patent in suit made any further assertion that the accused cabinet infringed either the Rand and King patent, or the James H. Rand, Jr., patent in suit.

The record shows that, as above stated, not only was no notice ever given to defendants that the accused cabinet infringed the Benjamin G. Rand patent, but it further shows that on July 16, 1930 (Dft.Ex. II) in reply to a letter charging infringement by plaintiff of three patents of the Acme Card System Company, upon which suit was subsequently brought (Acme Card System Company v. Remington-Rand Business Service, Inc., D.C., 3 F.Supp. 254; Remington Rand Business Service, Inc., v. Acme Card System Company, 4 Cir., 71 F.2d 628); plaintiff's counsel called attention to the alleged infringement by the Acme Company of certain patents of the plaintiff, not concerned with cabinet structures, and in the letter further stated as follows: "I understand that there are other patents and other matters in which your client has been trespassing or coming into conflict with mine, and we are checking up on this and will write you further when the information is at hand." Plaintiff never thereafter advised defendant that the Acme cabinet was considered to be an infringement of any of its patents. In the latter part of 1931, Mr. Johnston, the president of defendant corporation, had a meeting with Mr. James H. Rand, Jr., at the latter's request, at which they discussed the visible record business, but no assertion was made at that time that the defendant's cabinet was considered to be an infringement of the plaintiff's patents here in suit.

The record further contains the following: Arthur R. Rumbles, the General Manager of plaintiff's visible department, testified that ever since 1922 his company has met the accused cabinet in competition, and had lost sales on account of it. He said that the Acme cabinet that he met in competition ever since 1922 is identically the same as that here in evidence as plaintiff's Exhibit 1.

F. Lloyd Wassell (a witness for plaintiff) testified that in December, 1920, or January, 1921, in Dallas, Texas, he first ran across the Acme cabinet. He was in competition with it in the spring of 1922 in Chicago, Illinois, in a sale which plaintiff made to the Automobile Club of Chicago, where there was a test of various equipment and Acme was one of those tested. He pointed out to the parties the advantages of the Kardex equipment over the competing Acme and Rand equipment.

The first work on defendant's cabinet was done for it at the plant of Yaxley Manufacturing Company. Later it had its cabinets manufactured by the Bentson Manufacturing Company, who continued to manufacture them for about ten to fourteen months. Subsequently, Acme had its cabinets made by the General Fireproofing Company of Youngstown, Ohio. The first order was given the latter in May, 1921, the first cabinets were delivered in July, 1921, and Acme has continuously marketed such cabinets from that time to the present.

The records of the defendant company show that from January, 1922, to December, 1935, 69,584 of the accused cabinets were sold, having an average sale value of $100. As shown by the records, 104 of the accused cabinets were sold in January, 1922.

Walter Bender, General Superintendent of General Fireproofing Company of Youngstown, Ohio, produced the records of that company showing that the accused cabinet, in evidence as plaintiff's Exhibit 1, which bears serial number 3270, was made by his company, and the invoice therefor is dated November 25, 1921. He produced the blueprints of this cabinet, which are dated May, 1921, and testified that his company has been continuously manufacturing these cabinets since 1921.

Frank H. Johnston testified that the cabinet marked defendants' Exhibit L is a small size standard unit of the type which a salesman would carry with him for demonstration purposes.

Fred A. Schmitz, Vice President in charge of production of Globe-Wernicke Company of Cincinnati, who was with the General Fireproofing Company from 1920 until 1923 as Factory Superintendent in charge of all manufacturing problems, testified that he saw the defendant Ex. L cabinet late in 1920, or early in 1921. That the Acme Company was having the cabinets made by some concern who specialized in making steel cabinets, and the General Fireproofing Company was desirous of getting this business, and the defendant Ex. L cabinet was submitted to him for consideration from a manufacturing standpoint. He identified the cabinet in evidence as defendants' Exhibit M as the Acme visible index cabinet, and said he was responsible for the changes made in that cabinet as compared with the defendant Ex. L cabinet.

The evidence shows that defendants went to very considerable trouble and expended thousands of dollars in promoting the sale of its product, including the accused cabinet, which is an important item of its business. There are in evidence four large scrap books (Dft. Exs. GG-1 to GG-4) containing copies of defendants' national advertising, commencing as early as 1924. The accused cabinets are illustrated in these advertisements. Many catalogues were issued by the defendant company, in which the cabinets in question are illustrated, as well as the manner in which they are used. Some of these started as early as May, 1922, running through to 1934 (Dft. Exs. DD-3 to DD-11, inclusive).

It was testified that defendant company issued not less than 25,000 of each of these catalogues and that each issue cost in excess of $6,000.

In 1928, the defendant company acquired a factory, and has since made many additions to it, including a three story addition in 1929. The cabinets are manufactured by the General Fireproofing Company, but they are assembled in defendant's factory. It employs from seventy-five to ninety people in the factory, about sixty office people, and from ninety to one hundred and ten outside of both the office and factory. The Acme Company maintains twenty branch offices located in principal cities of the country, and has approximately eighty-nine dealers.

In view of the foregoing facts and all of the evidence adduced in this respect, defendants submit "that the neglect of the plaintiff to take any steps whatsoever in respect to the accused cabinet after the letter of October 5, 1922, and its neglect to even so much as suggest, subsequent to its letter of July 16, 1930, that the accused cabinet was an infringement of any of its patents, and the failure of it, and its predecessor in title to the Benjamin G. Rand patent, to assert at any time prior to the date this suit was filed that the accused cabinet infringed that patent, may fairly be taken, and would be considered by the ordinary person, as tantamount to an acknowledgment that the Acme cabinet was not thought by the plaintiff to infringe any of its patents," and that it is manifest that the energy represented by the years of effort of the defendant company in the development of the accused cabinet and the marketing thereof could and would have been turned into a different channel had the plaintiff with reasonable promptness and diligence proceeded with an action for the determination of the validity and infringement of its patent and had succeeded therein, and that it would be palpably unconscionable to now permit plaintiff to succeed in this action "in the absence of any adequate excuse for its delay."

In response to defendants' contentions, plaintiff claims and asserts that this defense of laches "must be considered separately as to each of the patents in suit because of the fact that they were owned by different parties until August 26, 1929. Patent No. 1,407,948 issued on February 28, 1922 to Benjamin G. Rand and title remained in him until August 26, 1929, when by an instrument of assignment he did for good and valuable consideration transfer and assign his entire right to Remington Rand Inc., plaintiff herein. In March 1931 suit for infringement of this patent was filed by the plaintiff herein against International Visible Systems Corporation. Immediately upon a final adjudication of the validity of the patent, that is upon the decision of the Circuit Court of Appeals for the Sixth Circuit in the International Visible case rendered June 6, 1935 and denial of a petition for rehearing on June 29, 1935 which held the patent to be valid and infringed, the present action was commenced (bill of complaint filed July 2, 1935; a petition to the United States Supreme Court for a writ of certiorari to review the aforesaid decision was denied October 14, 1935 [296 U.S. 618, 56 S.Ct. 139, 80 L.Ed. 439])."

It was stipulated that plaintiff received its entire right, title and interest in and to

Benjamin G. Rand patent No. 1,407,948 from Benjamin G. Rand as sole owner for good and valuable consideration by instrument in writing dated August 26, 1929, and that it received its entire right, title and interest in and to the James H. Rand, Jr., patent No. 1,429,628, for good and valuable consideration, from Rand Kardex Bureau, Inc., as sole owner, by an instrument in writing dated July 1, 1927.

Plaintiff submits, in view of the foregoing, that while it and its predecessor companies manufactured cabinets under the Benjamin G. Rand patent, "under an implied license resulting from a shop right", it was not until August 26, 1929, that plaintiff had title to the Benjamin G. Rand patent, so that it could commence any action for infringement thereof; that about a year and a half after obtaining ownership of the patent, plaintiff's right thereunder was put in litigation in the International Visible Systems suit, and that as soon as plaintiff's rights under the patent were definitely ascertained in that litigation, this action was commenced; that in view of this "there has been no unreasonable delay" by plaintiff in commencing this action under the Benjamin G. Rand patent.

The record, however, shows that while Mr. Benjamin G. Rand, the inventor, and until 1929 the patent owner, was not a salesman or an official of the plaintiff, he was nevertheless an engineer and experimental man doing development work for the plaintiff and its predecessors, including the Rand Company.

The James H. Rand, Jr., patent No. 1,429,628 was assigned December 1, 1926 to Rand Kardex Bureau, Inc. Thereafter, on July 1, 1927, Rand Kardex Bureau, Inc., sold and assigned the patent to Remington Rand, Inc., plaintiff herein.

The reason which plaintiff assigns for the fact that the question of infringement was not pursued any further after the letter of October 3, 1922 (Dft. Ex. A-2, hereinbefore referred to), from James H. Rand, Jr., to defendant, Acme Card System Company, and in part also as to why no action was taken as to the Benjamin G. Rand patent, is because "From before or about the time of issuance of the patents here in suit, the affairs of the plaintiff's predecessor companies, including their patent matters, were in a state of turmoil and confusion which could not help but develop from the consolidation of the numer-

ous companies which resulted in formation of the plaintiff, Remington Rand, Inc."

J. A. W. Simson, secretary and corporation attorney for plaintiff, Remington Rand, Inc., testified with regard to certain consolidations or mergers, stating that Remington Rand, Inc., is made up of approximately fourteen parent companies and that these all went in to form Remington Rand, Inc., either through consolidation or merger or purchase or affiliation.

Counsel for plaintiff claim that the testimony of Mr. Simson and others shows "the tremendous detail associated with the consolidation of these various companies, their sales forces, home offices and their patent matters", and (Rec. P. 738) "the tremendous internal turmoil that these companies were in during a certain period of years. * * * There were a series of consolidations that started somewhere around 1925, and they weren't able to get their patent affairs straightened out for a great number of years after that"; that "the patent matters of the companies had been handled by a large number of different patent attorneys; all of these patents were gradually brought together and the work in regard to this was not completed until approximately around the middle of 1933." And counsel submit that "from the foregoing it becomes apparent that plaintiff has not deliberately delayed in bringing suit; that the suit was not filed earlier was not an unconscionable or unjust failure to act against the defendants, but on the contrary resulted from the confusion of its corporate and patent affairs due to the numerous corporate changes. The consolidating of the manufacturing and selling efforts of numerous companies and the necessary consolidation of patent affairs, fully occupied the companies' officials, with the result that they were not able to consider and act upon the matter of this infringement earlier."

The court is of opinion, however, that the effect, insofar as defendants are concerned, both in fact and in law, under the evidence in this case, is the same as if plaintiff had "deliberately" delayed in bringing suit. Certainly defendants should not be penalized because plaintiff and its predecessors (defendants insist illegally, because allegedly in violation of the Clayton Act (Exhibit TT)—but this is not material) were devoting all of their time and energy to the merger, consolidation, pur-

chase and affiliation of various companies, meantime either maintaining silence entirely as to any claims of infringement of their patents, or making no effort to follow up such communications as were sent, which fact in and of itself not only was misleading, but served as a basis from which defendant, Acme Company, might reasonably infer no infringement actually was or ever would be claimed or insisted upon. When asked why plaintiff or its predecessors failed to file suit against the defendant company during the almost thirteen year period from 1922 until July, 1935, Mr. Simson replied that "I don't think the matter of the infringement was brought to the attention of the executives of the company until long after 1928, '29, close on to '30."

As defendants point out, while this is merely hearsay, nevertheless it seems almost incredible that plaintiff or its predecessors did not have cognizance of a business amounting to $6,958,400.00 in thirteen years, especially in view of the James H. Rand, Jr., letter of October 3, 1922. Nor does the fact that the title to the patents was not acquired until 1927 and 1929, respectively, offer an excuse, because plaintiff in each instance acquired the respective patents subject to all defenses which might be made against them, respectively. In addition to this, it appears from the record that while the present plaintiff did not acquire these patents until the dates herein-before referred to, nevertheless both Benjamin G. Rand and James H. Rand, Jr., were connected with its predecessor companies; that James H. Rand, Jr., was president and chairman of the Board of the American Kardex Company; that Benjamin G. Rand was associated with and was an engineer and experimental man with the Rand Company, as well as later with plaintiff, and that these companies were consolidated with and merged in plaintiff herein.

In Woodmanse & Hewitt Mfg. Co. v. Williams et al., 6 Cir., 68 F. 489 at page 492, the court say: "It is no answer to say that the complainant corporation was only organized a few years before suit was brought. Its predecessors in the ownership of the patent were also its predecessors in the business it is now carrying on in the making and selling of windmills embodying the brake covered by its patents. The complainant took these patents by assign-ment from assignors who had for years been guilty of negligence in the assertion of their alleged monopoly. The acquiescence of the former owners of the patent has in equity the same effect upon complainant's rights as its own subsequent neglect."

Plaintiff further submits that the Acme cabinet has always been manufactured by an outside manufacturer and that the defendant company has not increased the size of its factory or investment up to the present time; that it disposes of its cabinets through salesmen on a commission basis and that this is its present practice, and that for these reasons, among others, its defense of laches should not prevail. What the record shows in these respects has been hereinbefore set forth.

Counsel for the respective parties have cited the authorities which they submit support their respective claims. These authorities lay down the general principles by which this and other courts may be guided, but as counsel for plaintiff, in their brief, themselves state: "It is well understood that as respects laches, each case must stand on its own facts." So here, the court must and has considered the facts of the instant case to which it has sought to apply the general principles of law.

As further stated by plaintiff, mere delay in filing suit in and of itself does not constitute equitable estoppel. In support of this claim, and other claims generally, plaintiff cites Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (trademark case). The court there held (128 U.S. at page 523, 9 S.Ct. at page 145, 32 L.Ed. 526) that mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, "unless it has been continued so long, and under such circumstances, as to defeat the right itself." The doctrine of reasonable diligence is one to be applied in the exercise of discretionary jurisdiction—it is premised on the maxim that "those who seek equity must do equity."

█ Under the evidence in the instant case, as disclosed by the record, plaintiff and its predecessors in title at least were guilty of negligence, "which could [and should] be held to destroy the right to prevention of further injury." Menendez v. Holt, supra, 128 U.S. at page 525, 9 S.Ct. at page 145, 32 L.Ed. 526.

In Stearns-Roger Mfg. Co. v. Brown, 8 Cir., 114 F. 939 (also relied on by plaintiff), the court held that mere delay for any reasonable length of time, unaccompanied by such acts or conduct of the patentee and such facts and circumstances as amount to an equitable estoppel, will not deprive him, either on the ground of laches or of estoppel, of his right to a preliminary injunction. The court further (114 F. at page 944) say: "The doctrine of laches is an equitable principle, which is applied to promote, never to defeat, justice. It is a branch of the principle of equitable estoppel. Where a patentee, by deceitful acts, silence, or acquiescence, lulls an infringer into security, and induces him to incur expenses or suffer losses which he would not otherwise have sustained, courts of equity apply the doctrine of laches on the principle that one ought not to be permitted to deny the existence of facts which he has intentionally or recklessly induced another to believe to his prejudice." In the Stearns case the court then announced that "there is nothing of that character in this case."

■ In the instant case this court has come, on consideration of the facts, to another conclusion. While the evidence fails to show any "deceitful acts" as a matter of "fact" upon the part of plaintiff and its predecessors in title, their acts and conduct were such as that in law—or "constructively"—they amount to the same thing. The result of their acts is the same in law as if they had been in fact "deceitful". Certainly plaintiff and its predecessors in title by their "silence or acquiescence" lulled the defendant company (whether or not it be an infringer) into a sense of security and induced it—over a long period of time—to incur expenses and possible losses which otherwise would have been wholly unnecessary. The effect of all of this is, so far as the law is concerned, the same as if plaintiff and its predecessors in title had "intentionally or recklessly" induced defendant to proceed as the defendant company has done.

To the same effect, plaintiff cites also Gilmore v. Anderson, C.C., 38 F. 846 (copyright case); Ide v. Trorlicht, Duncker & Renard Carpet Co., 8 Cir., 115 F. 137, 148; Drum v. Turner, 8 Cir., 219 F. 188, 198; Smith Hardware Co. v. S. H. Pomeroy Co., 2 Cir., 299 F. 544; Donner v. Walgreen Co., D.C., 44 F.2d 637, 643; and Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 41 F.2d 668.

In keeping with the rule, each of these cases was decided, however, on its own particular facts. The De Vilbiss case, for instance, is readily distinguished from the case at bar. There the poverty of the patentee was such (41 F.2d at page 669) as that "he was personally financially unable to go into litigation with a strong opponent". The court further held (applicable in that case) that the period during and immediately after the world war constituted one "in which all reasonable postponement and suspension of litigation was a public duty." None of these elements appear in the instant case.

Plaintiff further suggests that it brought its first suit against the International Visible Systems Corporation and that, therefore, it was not bound at the same time to pursue defendants herein, and that whatever time was necessarily consumed in the prosecution of the International Visible Systems case should not be counted against it.

This general principle recognized in the cases is, however, not applicable here under the facts as they are disclosed by the record and epitomized herein.

Defendants to support their claim of laches cite a number of cases, none of which, they assert, "show as culpable a neglect to sue as is established by the facts in the case at bar."

In General Electric Co. v. Yost Electric Mfg. Co., D.C., 208 F. 719, at page 721, the court say: "That a patentee may sleep upon his rights and may lose his right to insist on his monopoly is well settled by the cases hereinafter cited, and it remains for the court to consider whether the facts in this case bring it within that principle of estoppel. * * *"

In Wilkie v. Manhattan Rubber Mfg. Co., D.C., 8 F.2d 785, the court held that a suit for infringement of patent was barred by laches, where the infringement continued for thirteen years after warning was given to infringer, without action to enjoin the infringement.

In Woodmanse & Hewitt Mfg. Co. v. Williams et al., supra, the court (68 F. at page 493) say: "Reasonable diligence as well as good faith are necessary to call into operation the powers of a court of equity. * * * Long acquiescence and

201

laches can only be excused by proof showing excusable ignorance, or positive inability to proceed on the part of the complainant * * *." The reason for such a rule the court sets out is that "time passes, memory fails, witnesses die, proof is lost, and the rights of individuals and of the public intervene." The court then affirms the principle that "the court will not entertain a case when it appears that the complainant, or those to whose rights he has succeeded, have acquiesced for a long term of years in the infringement of the exclusive right conferred by the patent, or have delayed, without legal excuse, the prosecution of those who have openly violated it."

To the same effect also, Sullivan v. Portland, etc., R. Co., 94 U.S. 806, 24 L. Ed. 324. Holman v. Oil Well Supply Co., D.C., 14 F.Supp. 490, affirmed 3 Cir., 83 F.2d 538.

In Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 64 F.2d 185, wherein a period of seven years elapsed before bringing suit, the court (64 F.2d page 186) say: "In the decision of this question [laches], there must be a balancing of equities. It is rather hard and seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it does not seem equitable for a person with full knowledge to sleep on his rights for seven years and thus lead another to think that he is safe in following his counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made large investments and built up a good business, punish him and innocent investors for doing what might have been prevented by timely action on the part of the patentee. * * *."

See, also, Wolf Mineral Process Corp. v. Minerals Separation North America Corp., 4 Cir., 18 F.2d 483; Dock & Terminal Engineering Co. v. Pennsylvania R., 3 Cir., 82 F.2d 19; Halstead v. Grinnan, 152 U.S. 412, 14 S.Ct. 641, 38 L.Ed. 495; Gillons v. Shell Co., 9 Cir., 86 F.2d 600.

Finally, plaintiff submits (assuming infringement) that defendants are tort-feasors, and that they are now claiming that their continued wrong-doing "has given them a standing in equity which precludes plaintiff from asserting its legitimate rights"; and again, that "a tort feasor merely by reason of long continuance of his tort is not to be excused and permitted to continue his wrong doing."

The theory of the law, however, is not that continued wrong-doing by one party ripens into a right to the prejudice of another, but it is merely that a party should act with reasonable diligence for the reasons, among others, set out in Woodmanse & Hewitt Mfg. Co. v. Williams, 6 Cir., 68 F. at page 493, supra, quoted from Kittle v. Hall, C.C., 29 F. 508. It is based upon the same principle as that applied frequently by state legislatures when enacting statutes limiting the time in which an incontestable clause in an insurance policy may be successfully challenged even for fraud. No principle is more firmly established than that fraud vitiates a contract. Yet statutes limiting contestability after a certain period of time have been repeatedly held valid and have been uniformly enforced on the theory, as stated by the court in Bogacki v. Great-West Life Assurance Co. 253 Mich. 253, at page 256, 234 N.W. 865: "The statute condones no fraud; it merely operates in the nature of a statute of limitations. The law tolerates no fraud, yet frequently permits time to operate as a bar to its assertion."

Similarly, in Wright v. Mutual Ben. Life Ass'n, 118 N.Y. 237, at page 243, 23 N.E. 186, at page 187, 6 L.R.A. 731, 16 Am.St.Rep. 749, the court say: "It is not a stipulation absolute to waive all defenses, and to 'condone fraud.' On the contrary, it recognizes fraud and all other defenses, but it provides ample time and opportunity within which they may be, but beyond which they may not be, established. It is in the nature of, and serves a similar purpose, as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds."

So here, the law condones no wrong-doing (if such there is upon defendant's part, as to which the court makes no finding); it simply says that under the facts of the instant case the acts and conduct of plaintiff and its predecessors in title to the patents in suit have been such as "to operate as a bar to its assertion."

The prayer of defendants, as set out in their answer, should be and it is granted.

Order accordingly.