### CUBBISON v. DELCO PRODUCTS COR-PORATION et al.
### No. 416.

District Court, S. D. Ohio, W. D.

Aug. 3, 1939.

W. Harold Yost, of Youngstown, Ohio, for plaintiff.

Drury Cooper and Thomas J. Byrne of Cooper, Kerr & Dunham, both of New York City, for defendants.

NEVIN, District Judge.

This is a suit in equity under the patent laws of the United States. On June 30, 1936, plaintiff herein, Paul J. Cubbison, filed his bill of complaint against defendants, The Delco Products Corporation and The General Motors Corporation, charging them and each of them with having infringed certain letters patent as follows:

No. 1,066,255, granted to plaintiff on July 1, 1913, for "Shock-Absorber".

No. 1,171,096, granted to plaintiff on February 8, 1916, for "Shock-Absorber".

No. 1,367,866, granted to plaintiff on February 8, 1921, for "Shock-Absorber".

Patent No. 1,066,255 contains 10 claims. Of these, Claims 1, 2, 3, 4, 5, 6, 9 and 10 (all except 7 and 8) are in issue. Patent No. 1,171,096 contains 9 claims. Of these, Claims 1, 2, 3 and 4 are in issue. Patent No. 1,367,866 contains 11 claims. Of these Claims 1, 2, 3, 4, 5 and 6 are in issue.

The General Motors Corporation, named as a defendant, was not served. Defendant, The Delco Products Corporation, is a subsidiary of The General Motors Corporation.

On March 17, 1937, plaintiff filed a second amended bill of complaint which thereafter, to-wit, on August 3, 1937, was amended in the certain respects set forth in a journal entry of that date. On February 1, 1938, defendant, The Delco Products Corporation, filed its answer to the second amended bill of complaint, as amended. Defendant challenges the validity of each of the patents in suit and denies infringement. It further avers "that plaintiff has been guilty of laches in instituting suit for alleged infringement of the letters patent of the United States in suit, and that in Equity and conscience plaintiff is estopped from maintaining this suit against defendant." It prays to be dismissed with its costs.

The cause came on for hearing before the court on February 23, 1939, on the second amended bill of complaint, as amended, and the answer thereto. At that time each of the patents in suit had expired and no injunctive relief was, or is, possible. At the conclusion of plaintiff's prima facie case defendant made a motion "to dismiss". The motion was based on Rule 41(b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and is as follows:

"Mr. Cooper: * * * First, as to the first patent in suit, 1,066,255, I move

to dismiss as to that patent upon the ground that it expired six years before the bill was filed, and upon the further ground that the plaintiff has introduced no testimony tending to connect that patent or its claims with any device made and sold by the defendant at any time. They have not made any effort to read its claims upon any of the defendant's devices and I think that as to that patent there should be a dismissal.

"The second ground is as to the second patent in suit, on the ground that the only devices as to which any evidence asserting infringement is offered by the plaintiff are those known as the Series 1570, which it is stipulated defendant ceased to manufacture in November, 1930. That stipulation (Rec. p. 26) appears in connection with my marking at the beginning of the trial of these colored diagrams when it was stipulated that the recitals on there are correct. That production was started in 1929 and discontinued in 1930, and under the rule announced by Your Honor and applied in the United Aircraft v. Fay & Egan Company case, and affirmed recently by the Court of Appeals, Hamilton Standard Propeller Co. v. Fay-Egan Mfg. Co., 6 Cir., 101 F.2d 614, a suit in equity will not lie under those circumstances, that is, where the defendant years before the suit was brought discontinued the device charged to infringe. * * * (Rec. p. 368) This is the third ground that applies to all three patents. * * * The first ground was as to the first patent, if Your Honor please, it had expired six years before the suit was filed, and plaintiff offered no evidence to show an adoption of any of the claims by any of the devices of the defendant.

"The second ground was as to the second patent, because this Series 1570, that type, which was the only one charged to infringe the second patent, was abandoned almost six years before the suit was brought, and there I think the rule of Fay & Egan applies.

"But the third ground is common to all, and includes also that Fay-Egan doctrine in an indirect way. So that on the third ground we come to the point that the plaintiff does not ask for damages under Paragraph 8 of the second amended bill in equity."

Defendant submitted further as a part of the third ground of its motion applicable to the entire cause of action upon the three patents in suit that plaintiff's evidence shows that plaintiff has been guilty of laches and has thereby precluded himself from any recovery against defendant.

As shown by the record the court overruled the foregoing motion to dismiss made at the close of plaintiff's prima facie case with the understanding that it could be renewed at the close of all of the evidence. The following appears:

"The Court: * * * If we follow this procedure then I will at this time, without further consideration and for the moment, overrule the motion that has been made now to dismiss the case on the various grounds, including that of laches, to which ruling the defendant may have its exception. That is with the understanding that you are going to follow this procedure and offer this other testimony and then ask the court to take it on that question of laches, and then I will hear you further if you wish to be heard, and then I will hear from Mr. Yost on that, * * *

"Mr. Cooper: I am perfectly willing to do that.

"The Court: For the present the record will show I have overruled your motion for the time being and you may have your exception. Now do you want to offer this other evidence, that is, the Saturday Evening Post?

"Mr. Cooper: Yes.

"The Court: Have you any objection to disposing of this question of laches first?

"Mr. Yost: No, only that I be permitted, of course, to show the law that will support my—

"The Court: Certainly; I am going to give you an opportunity to be heard right now, instead of having you argue the motion. I thought we would wait until all the proofs are in."

Thereupon evidence was offered on behalf of defendant bearing upon the question of laches. The record then shows as follows:

"Mr. Yost: As I follow Your Honor, Mr. Cooper has now offered all the evidence that he would offer relative to that.

"The Court: That is correct.

"Mr. Yost: And that it is now my duty to present the arguments in defense—

"The Court: Now, Mr. Yost, to be perfectly frank, I am inclined to think— I am not passing on the matter now but

I think it is only fair to say to you that I am inclined to think that this motion to dismiss on the ground of laches is well taken and I am inclined to think you will have to show me why I shouldn't sustain the motion, you see.

"Mr. Yost: Yes, sir.

"The Court: Because it occurs to me that if I was right in this Remington Rand case, Remington Rand, Inc., v. Acme Card System Co. et al., 29 F.Supp. 192, 34 U.S.P.Q. 325, Equity No. 928 in this Court (Cincinnati) decided August 4, 1937. Then the same reasons—of course, the facts are different, as you will see if you care to take the trouble to glance through that case—naturally they would be, but the general principles, it seems to me, are the same, and it also seems to me that the principles upon which I relied there and which I discussed at some length are applicable here. For example, I cite this case of Stearns-Roger Mfg. Co. v. Brown, 8 Cir., 114 F. 939, and say:

" ' * * * where the court held that mere delay for any reasonable length of time, unaccompanied by such acts or conduct of the patentee and such facts and circumstances as amount to an equitable estoppel will not deprive him, either on the ground of laches or of estoppel, of his right to a preliminary injunction. The court further (114 F. page 944) say: "The doctrine of laches is an equitable principle, which is applied to promote, never to defeat, justice. * * * Where a patentee, by deceitful acts, silence, or acquiescence, lulls an infringer into security, and induces him to incur expenses or suffer losses which he would not otherwise have sustained, courts of equity apply the doctrine of laches on the principle that one ought not to be permitted to deny the existence of facts which he has intentionally or recklessly induced another to believe to his prejudice." '

"There is no claim here, of course—at least, I have seen no evidence that there is any deceit or intentional conduct upon the part of Mr. Cubbison, but where it is so long delayed—this is what I said in the Remington Rand case:

" 'In the instant case this court has come, on consideration of the facts, to another conclusion. While the evidence fails to show any 'deceitful acts' as a matter of "fact" upon the part of plaintiff and its predecessors in title, their acts and conduct were such as that in law—or "construc-tively"— they amount to the same thing. The result of their acts is the same in law as if they had been in fact "deceitful". Certainly plaintiff and its predecessors in title by their 'silence or acquiescence' lulled the defendant company (whether or not it be an infringer) into a sense of security and induced it—over a long period of time—to incur expenses and possible losses which otherwise would have been wholly unnecessary. The effect of all of this is, so far as the law is concerned, the same as if plaintiff and its predecessors in title had 'intentionally or recklessly' induced defendant to proceed as the defendant company has done.'

"Then to the same effect I cite a number of cases. The point I want to make is here has been this long period of time. There was a notice that they claim went to this company years ago but nothing has ever been done about it. Of course, here there is no possible chance for an injunction now. Then I cite Woodmanse & Hewitt Mfg. Co. v. Williams et al., 6 Cir., 68 F. 489, and say:

" 'Reasonable diligence, as well as good faith, are necessary to call into operation the powers of a court of equity. * * * Long acquiescence and laches can only be excused by proof showing excusable ignorance, or positive inability to proceed on the part of the complainant * * * '. The reason for such a rule the court sets out is that 'time passes, memory fails, witnesses die, proof is lost, and the rights of individuals and of the public intervene.' The court then affirms the principle that 'the court will not entertain a case when it appears that the complainant, or those to whose rights he has succeeded, have acquiesced for a long term of years in the infringement of the exclusive right conferred by the patent, or have delayed, without legal excuse, the prosecution of those who have openly violated it.'

"I did not mean to interrupt you but I just wanted to give you the basis of my statement that it seemed to me in view of this decision that the facts are such in this case as now to make it incumbent upon plaintiff, upon the proofs here, to show the court why this motion should not be sustained. If the court sustains that, that applies to all three patents separately from the other grounds as to the separate patents. You may proceed. * * *

"The Court: * * * Of course, the first grounds of your motion are directed to the case without any proof on the part of defendant.

"Mr. Cooper: Yes.

"The Court: The only proof defendant's case has any connection with is on the question of laches. I think we all understand it alike. So if that is satisfactory to you I think I will take the case that way at this time on the motion to dismiss and also on the motion to decide the case now upon all the evidence on the question of laches. If I sustain the motion to dismiss upon any of the grounds, or if I sustain the defendant's position upon the broad question of laches, then that would be a determination of the case at that time, a dismissal of the case on which there can be a final judgment and appeal taken to the higher court. If I overrule it on any of the grounds, then you will have to come back at some time when we can fix a date, within the reasonably near future, and we can hear the rest of defendant's testimony. Is that satisfactory to you gentlemen? * * *

"Mr. Yost: Yes, Your Honor.

"The Court: And you, Mr. Cooper and Mr. Byrne?

"Mr. Cooper: Yes.

"Mr. Byrne: Yes, sir."

### Patent No. 1,066,255.

Since the completion of the hearing briefs have been filed by counsel for the respective parties. In his reply brief filed April 15, 1939, counsel for plaintiff states (p. 2): "Plaintiff now by this brief hereby withdraws all objections heretofore offered, by plaintiff to the dismissal of said Patent No. 1,066,255." And on page 6 of the same brief: "Plaintiff therefore respectfully submits that defendant's motion shall be overruled except as to patent No. 1,066,255."

In view of the withdrawal of all objections on behalf of plaintiff to the sustaining of defendant's motion to dismiss this action as to Patent No. 1,066,255, defendant's motion as to Patent No. 1,066,255, made at the close of plaintiff's prima facie case and referred to in the first branch of that motion, is sustained without further consideration thereof.

Patents Nos. 1,171,096 and 1,367,866.

The record shows, as claimed by defendant, that defendant began the manufacture of shock absorbers in 1927. An advertisement (Ex. D) of defendant appeared in The Saturday Evening Post, issue of March 17, 1928. Plaintiff saw this advertisement and was in possession of a copy thereof from that time until the time of trial when he produced it. Plaintiff was a subscriber to the Saturday Evening Post and saw advertisements therein of defendant's single acting shock absorbers (exemplified by Exs. A-1 to A-3) and defendant's V-type of shock absorbers (exemplified by Ex. A-5) advertised therein.

Plaintiff's attorney Mr. A. J. Hudson, of Cleveland, Ohio, wrote a letter (Ex. 12-A) to General Motors Corporation on November 13, 1928, notifying it of alleged infringement of patent in suit No. 1,066,-255. This was more than seven and one-half years before this suit was instituted on June 30, 1936.

On December 28, 1928, Mr. Hudson wrote a letter (Ex. 12-C) to plaintiff's attorneys, Lewis and Levin, Youngstown, Ohio, after receipt of a letter (Ex. 12-B) from General Motors Corporation stating that the Lovejoy shock absorbers with which its vehicles were equipped did not infringe patent in suit No. 1,066,255, in which he (Mr. Hudson) stated: "Before I would be willing to state my position with respect to bringing suit, I should want to see a shock absorber of the Lovejoy type such as are now being made and are charged to be infringed as, of course, in order to bring a suit in equity it would be necessary for us to show that infringement is still going on."

No notice of alleged infringement was received by defendant as to patents in suit Nos. 1,171,096 and 1,367,866.

Mr. Henry W. Kachel wrote to defendant on April 29, 1933 (Ex. C), enclosed a copy of patent in suit No. 1,367,866 and offered to grant a non-exclusive license for the life of this patent for Five Thousand Dollars ($5,000). No charge of alleged infringement was made by Mr. Kachel against defendant.

The alleged infringement of defendant was open and to the knowledge of the public. In The Saturday Evening Post advertisement of March 17, 1928 (Ex. D),

it is stated: "Even if you are planning to drive your present car another season, *see your car dealer, or the nearest Authorized Lovejoy Distributor of United Motors Service * * *.*"

Plaintiff did not visit any of the authorized Lovejoy distributors of United Motors Service. He testified that he had not visited any place of business of United Motors Service because it was out "of my district in the town and I never passed the place; if I passed the place it would be by chance * * the sign I saw said United Motor Service".

This action was begun by the filing of the complaint on June 30, 1936. Patent No. 1,171,096 expired on February 7, 1933 —three years, four months and twenty-three days before the complaint in this action was filed, and patent No. 1,367,866 expired on February 7, 1938.

The manufacture and sale of shock absorbers by General Motors Corporation through defendant has been continuous, open and to the knowledge of the public since, at least, March 17, 1928—the date of publication of its advertisement in The Saturday Evening Post (Ex. D). Defendant began its manufacture in 1927. Defendant has extended its business in the manufacture of shock absorbers of varying types from that time, all without any effort on the part of plaintiff to enforce any claim for alleged infringement until after two of the patents sued upon had expired. The extent of expansion of defendant's manufacture and sale of shock absorbers is exemplified by Exhibits 18–A to 18–M.

No opportunity was afforded to defendant to consider any claim of plaintiff under patents Nos. 1,171,096 and 1,367,866 until this action was begun, which was after patent No. 1,171,096 had expired and after defendant had been engaged for an appreciable time in extensive manufacture and sale of its shock absorbers.

A patent owner who seeks equity must act with reasonable diligence to enforce his claimed rights under a patent against an alleged infringer. In a situation where a patentee does not act with reasonable diligence or promptness, he will be debarred in equity from any recovery.

In the instant case plaintiff caused notice of alleged infringement to be given under patent No. 1,066,255 in November, 1928. Plaintiff did not give notice of alleged infringement under the other two patents in suit. Plaintiff then deferred action for over seven and a half years and until after patent No. 1,171,096 had expired.

In his letter dated December 28, 1928 (Ex. 12–C) Mr. Hudson stated to plaintiff's Youngstown attorneys that "even if satisfied of infringement and my own willingness to undertake a suit, I would still feel that the plaintiff should put up sufficient amount of money to cover the costs of conducting the litigation, and by this I mean all legal expenses and not including attorneys' fees." Thus it is apparent that Mr. Hudson would have proceeded with an action if it appeared to him to be justified merely upon the payment of necessary expenses and without any advancement on account of fees for prosecuting a suit.

Counsel for plaintiff submits (Br. p. 19) that:

"Defendant in 1928 assured Cubbison that it was not infringing his patent. Cubbison found no infringement when he subsequently inspected the device. Equity searches the acts, not only of one party, but of both parties.

"Laches is based upon the patentee 'lulling' the infringer into a sense of security. In the instant case the defendant 'lulled' Cubbison into believing that they were not infringing. Equity must excuse Cubbison's belief of defendant's representations from 1929 to 1934 because the defendant was responsible for it. The rule applies both ways."

Upon the record, however, and under the authorities, including those cited and relied upon by this court in its decision in the Remington Rand case, supra, 29 F.Supp. 192, 34 U.S.P.Q. 325, the court is of opinion, as claimed by defendant in its answer, that plaintiff has been guilty of such laches as to estop and preclude him from maintaining this suit in equity against defendant.

It is the view of the court that this case falls squarely within the decision of the Circuit Court of Appeals of this (Sixth) Circuit in Woodmanse & Hewitt Manufacturing Co. v. Williams et al., 68 F. 489, and the decisions of the Supreme Court in McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828 and Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526.

 

Upon a consideration of all of the foregoing the court finds in favor of defendant and against plaintiff and that plaintiff's second amended bill of complaint, as amended, should be dismissed as to Patent No. 1,066,255 upon the statement and at the request of counsel for plaintiff, and as to the remaining two patents, to-wit: Nos. 1,171,096 and 1,367,866, upon the ground of laches upon the part of plaintiff precluding any relief being granted under the second amended bill of complaint, as amended. In view of this ruling it is unnecessary for the court to pass upon or determine any other issues raised or presented by the pleadings or motion to dismiss.

Decree accordingly.